**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEXANDER THOMAS
HEBRARD,

*Plaintiff-Appellant*,

v.

JEREMY M. NOFZIGER;
BRANDON KELLY; JASON
BROWN; C. GOVE,

*Defendants-Appellees*.

No.22-35327

D.C. No.
6:19-cv-01498-
YY

OPINION

Appeal from the United States District Court
for the District of Oregon
Youlee Yim You, Magistrate Judge, Presiding

Argued and Submitted April 17, 2023
Portland, Oregon

Filed January 11, 2024

Before: Johnnie B. Rawlinson, Carlos T. Bea, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Sung

# SUMMARY[*]

## Prisoner Civil Rights/*Heck v. Humphrey*

The panel affirmed the district court's sua sponte dismissal of Oregon inmate Alexander Hebrard's 42 U.S.C. § 1983 complaint as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Hebrard alleged that he was disciplined in prison without due process of law and sought damages for the disciplinary sanctions imposed, but did not seek relief for the revocation of 27 days of his earned-time credits. Three years after Hebrard's complaint was filed, the district court *sua sponte* requested briefing on whether *Heck* barred his claim. Under *Heck*, a section 1983 suit for damages that would necessarily imply the invalidity of the length of an inmate's sentence must be dismissed unless the inmate first challenges his sentence in habeas and obtains relief.

The panel determined that defendant's failure to plead *Heck* as an affirmative defense constituted a forfeiture rather than a waiver. The district court did not err when it *sua sponte* resurrected defendant's forfeited *Heck* defense at the summary judgment stage and dismissed the complaint under the Prison Litigation Reform Act, 28 U.S.C. 1915(e)(2)(B)(ii), which provides that dismissals for failure to state a claim are obligatory, even when the legal basis for the dismissal is raised *sua sponte*.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Addressing the merits of the dismissal, the panel held that it was clear from the face of the complaint that Hebrard's claim necessarily implicated the validity of the revocation of his earned-time credits, which extended his stay in prison. Under *Edwards v. Balisok*, 520 U.S. 641 (1997), Hebrard's decision not to request relief for the loss of his earned-time credits did not mean his claim did not challenge the validity of the duration of his confinement. A successful challenge to the validity of the procedures employed during Hebrard's disciplinary hearing necessarily encompassed a determination that the prison could not validly impose any sanctions—including the revocation of plaintiff's earned-time credits. To comply with *Heck*, Hebrard had to obtain habeas relief before filing this § 1983 action. Because he did not do so, his claim was barred by *Heck*.

Dissenting, Judge Sung stated that on this record, it was uncertain whether the restoration of Hebrard's earned-time credits would necessarily lead to his immediate or speedier release from custody. Under Oregon law, it is possible that Hebrard is receiving earned-time credits that cannot lead to his immediate or speedier release. She therefore disagreed with the conclusion that the district court properly dismissed Hebrard's claim as *Heck*-barred.

## COUNSEL

Jeremy A. Carp (argued), Erick J. Haynie, and Craig Streit, Perkins Coie LLP, Portland, Oregon, for Plaintiff-Appellant.

Jon Zunkel-Decoursey (argued), Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Oregon Department of Justice, Salem, Oregon; for Defendants-Appellees.

## OPINION

BEA, Circuit Judge:

Plaintiff-Appellant Alexander Hebrard ("Hebrard"), an Oregon state inmate proceeding *in forma pauperis*, appeals the dismissal of his 42 U.S.C. § 1983 action as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Hebrard claimed that he was disciplined in prison without due process of law because he was prevented from presenting an adequate defense and therefore was found guilty of what he claims are baseless rule violations by Defendant-Appellee Jeremy Nofziger ("Nofziger"), the prison official who presided over his disciplinary hearing. Hebrard sought damages for the sanctions Nofziger imposed, save for the revocation of 27 days of his earned-time credits, as to which he requested no relief in this case.

Three years after Hebrard's complaint was filed, the district court *sua sponte* requested briefing on whether *Heck* barred his claim. Under *Heck*, "a § 1983 suit for damages that would . . . 'necessarily imply' the invalidity of the length of an inmate's sentence" must be dismissed unless the inmate first challenged his sentence in habeas and obtained relief. *Nelson v. Campbell*, 541 U.S. 637, 646 (2004). The district court held that *Heck* required a dismissal of Hebrard's claim. Hebrard sought to expunge all of his disciplinary convictions, on a basis which would thereby necessarily invalidate all the sanctions imposed—including the revocation of his earned-time credits. And because the revocation of Hebrard's credits lengthened his sentence, the district court held that Hebrard should have first filed his claim in habeas. His failure to do so meant the court was required to dismiss the action as barred by *Heck*.

We conclude that the district court did not err.  Under the Prison Litigation Reform Act ("PLRA"), it was authorized to dismiss Hebrard's *in forma pauperis* complaint for failure to state a claim, even though it had raised *Heck sua sponte*. And the court correctly held that were Hebrard's claim successful, it would call into doubt the proper duration of his confinement.  As a result, to comply with *Heck*, Hebrard needed to obtain habeas relief before filing this § 1983 action.  Because he did not do so, his claim must be dismissed as *Heck*-barred.  Accordingly, we affirm.

## I.  BACKGROUND[1]

### A.  Factual Background

In 2018, prison officials began to suspect that Hebrard had used his prison account to launder money and had smuggled drugs into prison.  As a result, he was charged with violating the prison's rules against racketeering, distribution of a controlled substance, possession of drugs, and possession of contraband.  Prior to the disciplinary hearing, Hebrard submitted written requests for the production of evidence related to the charges.  He demanded that the prison produce the letters Hebrard purportedly wrote to his confederates discussing illicit activities, the videos of his prison visits with these individuals, and the transcripts of the phone calls he had with them.

Nofziger presided over Hebrard's disciplinary hearing, which was held on November 27, 2018.  At the hearing, Nofziger read the charges against Hebrard and denied each of Hebrard's written evidentiary requests—allegedly

---

[1] Except where otherwise stated, these facts are taken from Hebrard's complaint and are accepted as true.  *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992).

without "a valid or reasonable reason." The transcript of the disciplinary hearing reveals that Nofziger had informed Hebrard that these requests were denied because they were either moot, or because the requested information was confidential. Nofziger then reviewed the evidence supporting the charges against Hebrard. Nofziger read transcripts of Hebrard's calls that involved Hebrard's conversations with his associates regarding drug smuggling and money his associates deposited into his prison account that was not theirs. And Nofziger stated on the record that several letters in Hebrard's handwriting described how he planned to smuggle drugs into the prison. Hebrard was not permitted to see either the transcripts or the letters.

At the end of the hearing, Nofziger found Hebrard guilty of the drug possession, distribution of a controlled substance, and racketeering charges and was sanctioned. Hebrard was fined $100, had $1,050 confiscated from his prison account, was placed in segregated housing for 120 days, lost 365 days of visitation rights, and had 27 days of his earned-time credits revoked. The final disciplinary report reveals that the sanctions were imposed *collectively* and that the rule violations had been merged together. The prison denied Hebrard's administrative appeal on February 6, 2019.

**B. Procedural History**

On September 17, 2019, Hebrard filed this § 1983 action. The complaint named several defendants, but only Nofziger remains.**[2]** Hebrard claimed that Nofziger's actions during the disciplinary hearing violated his procedural due process

---

[2] Hebrard voluntarily agreed to have the district court enter summary judgment in favor of the other named defendants. Thus, only Hebrard's Fourteenth Amendment procedural due process claim against Nofziger is before us on appeal.

rights under the Fourteenth Amendment. In particular, he claimed that Nofziger lacked an evidentiary basis to find him guilty of the rule violations: Nofziger was alleged not to have called witnesses, produced documentary evidence, or provided an adequate explanation for his denial of Hebrard's request for an investigation into the charges. In his prayer for relief, Hebrard sought damages for the sanctions imposed. He specifically sought to recoup the confiscated money and the fine as well as to recover damages for his placement in segregated housing and for his loss of visitation rights. But Hebrard did not seek damages for the revocation of his earned-time credits.[3]

Hebrard filed an application for leave to proceed *in forma pauperis*, which the district court granted. On May 14, 2020, approximately one year and three months after Hebrard's administrative appeal was denied, Nofziger filed his answer. Nofziger raised qualified immunity and the PLRA's exhaustion requirement as affirmative defenses.

On June 28, 2021, Nofziger moved for summary judgment contending that he had not violated Hebrard's due process rights and that he was entitled to qualified immunity. Following briefing and a hearing on the motion, the district court requested supplemental briefing on whether *Heck v. Humphrey* barred Hebrard's claim. This was the first time

---

[3] Hebrard's briefing describes these 27 days as "good-time" credits whereas Nofziger's briefing and Hebrard's complaint describe them as "earned-time" credits. The difference in terminology is immaterial because the parties use the terms synonymously. *See Samson v. Brown*, 486 P.3d 59, 61 (Or. Ct. App. 2021). Given the complaint and final disciplinary report use the term "earned-time" credits, we will do so as well.

anyone had raised *Heck* as a potential bar to Hebrard's ability to obtain relief.

After the parties filed supplemental briefing regarding *Heck*, the district court issued its opinion and order which dismissed Hebrard's suit. The court held that the PLRA authorized its *sua sponte* dismissal under *Heck* because "it [wa]s apparent on the face of the complaint that *Heck* bar[red] [hi]s claim[]." The court held that were Hebrard to succeed on his claim that his procedural due process rights were violated at his disciplinary hearing, the favorable ruling would implicitly call into doubt the revocation of his earned-time credits, which had extended his stay in prison. Because Hebrard had not overturned his disciplinary conviction in a habeas proceeding as *Heck* required, the court dismissed his claim without prejudice and entered judgment. Hebrard timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.[4]

## II. STANDARD OF REVIEW

We review the dismissal of a complaint as *Heck*-barred *de novo*. *Beets v. Cnty. of L.A.*, 669 F.3d 1038, 1041 (9th Cir. 2012). And we review the district court's interpretation and application of the PLRA *de novo*. *Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007). Like Rule

---

[4] Although no party raised the issue, we must ensure we have appellate jurisdiction over this appeal. *Doe v. Regents of the Univ. of Cali.*, 891 F.3d 1147, 1154 (9th Cir. 2018). This court has appellate jurisdiction over dismissals without prejudice for failure to satisfy an exhaustion requirement. *Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 845–46 (9th Cir. 2009). Under our case law, *Heck* is akin to such an exhaustion requirement. *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016). It is clear we have appellate jurisdiction here.

12(b)(6) dismissals, dismissals of *in forma pauperis* complaints for failure to state a claim under 28 U.S.C. § 1915(e) are reviewed *de novo*. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

## III. THE DISTRICT COURT'S *SUA SPONTE* DISMISSAL

Before we assess whether *Heck* bars Hebrard's claim, we must resolve his preliminary challenges to the district court's *sua sponte* dismissal of his claim. Hebrard contends the dismissal was improper because Nofziger waived *Heck*. And he contends that even were Nofziger's failure to raise *Heck* only a forfeiture, the court's *sua sponte* dismissal of his complaint as *Heck*-barred at the summary judgment stage must be reversed because it was prejudicial.

We agree with Hebrard that *Heck* is an affirmative defense that may be waived or forfeited. *Washington v. Los Angeles County Sheriff's Department*, 833 F.3d 1048, 1056 & n.5 (9th Cir. 2016). But as explained below, Nofziger did not waive *Heck*. Nofziger's failure to plead *Heck* as an affirmative defense clearly constituted only a forfeiture. And as is further explained below, we also hold that the district court did not err when it looked past Nofziger's forfeiture and *sua sponte* evaluated whether *Heck* barred Hebrard's claim. This is because the PLRA expressly authorized the district court to dismiss Hebrard's complaint for failure to state a claim at any time, even when it raised the legal basis for the dismissal of its own accord.

### A. Nofziger's Alleged Waiver

Hebrard's waiver argument is based solely on the fact that Nofziger "[n]ever raised *Heck* as a defense." But as we have explained, the failure to raise an argument in a timely

fashion is a forfeiture not a waiver. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 472 n.18 (9th Cir. 2023). Even at oral argument when pressed to distinguish between the two, Hebrard continued to argue that Nofziger's failure to raise *Heck* and the "sheer passage of time" were sufficient to constitute a waiver. They are not. A finding of waiver requires evidence of a party's actions that evince his intentional relinquishment of a known right. *Id.* at 471–79; *accord United States v. Depue*, 912 F.3d 1227, 1233 (9th Cir. 2019). Hebrard's failure to identify *any* of Nofziger's actions in this case that even remotely suggest he "intentionally relinquished" his *Heck* defense compels us to conclude that the *Heck* defense was not waived. *Crowley v. Epicept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018).

## B. *Sua Sponte* Dismissals under the PLRA

Hebrard next contends that the *sua sponte* dismissal was improper because the district court's resurrection of Nofziger's forfeited *Heck* defense was prejudicial. This argument fails under the plain terms of the PLRA.

Hebrard proceeded *in forma pauperis* below, which means he is subject to the PLRA. Under the PLRA, a "court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). This provision authorizes "*sua sponte* dismissals of *in forma pauperis* cases" that fail to state a claim for relief. *Jones v. Bock*, 549 U.S. 199, 214 (2007) (citing 28 U.S.C. § 1915(e)(2)(B)). Thus, § 1915(e) "not only permits *but requires* a district court to dismiss an *in forma pauperis* complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (emphasis added). And, under the PLRA, this mandatory *sua sponte* dismissal may occur at "*at any*

*time*." *Barren*, 152 F.3d at 1194 (quoting 28 U.S.C. § 1915(e)(2)(B)(ii)). Admittedly, the same *substantive* rules apply to Rule 12(b)(6) and § 1915(e) dismissals for failure to state a claim. *Lopez*, 203 F.3d at 1127–28. But under the plain text of the PLRA, § 1915(e) dismissals for failure to state a claim, unlike Rule 12(b)(6) dismissals, are obligatory, even if the court raised the legal basis for the dismissal *sua sponte*. *Lopez*, 203 F.3d at 1127, 1130.

Thus, Nofziger's forfeiture did not bar the court's *sua sponte* application of *Heck* to Hebrard's claim. Given his *in forma pauperis* status, § 1915(e) authorized the district court to raise *Heck* as a defense to his claim at any time of its own accord. And because the district court found that *Heck* was "an obvious bar to securing relief on the face of the complaint," *Washington*, 833 F.3d at 1056 (citation and internal quotation marks omitted)—the standard that governs whether a complaint fails to state a claim for relief because the cause of action is barred by *Heck*—the plain terms of the PLRA mandated the dismissal of Hebrard's complaint for failure to state a claim.[5]  Thus, under

---

[5] Hebrard suffered no prejudice as a result of the district court's *sua sponte* application of *Heck*. His underlying due process claim is almost certainly meritless. A disciplinary conviction comports with due process if the prison's disciplinary findings are supported "by some evidence in the record." *Walpole v. Hill*, 472 U.S. 445, 454 (1985). And due process permits officials to limit a prisoner's access to evidence if such access would create a risk to the safety of others or the operations of the prison. *Wolff v. McDonnell*, 418 U.S. 539, 566–67 (1974). Nofziger satisfied due process here. He discussed Hebrard's phone calls and letters, which contained evidence that substantiated the disciplinary charges. And Nofziger informed Hebrard that his requests for witnesses and further documentary evidence would create a risk to the safety and security of the prison's operations. Given Hebrard's underlying challenge would not otherwise merit relief, the delay in the court's *sua sponte* dismissal

§ 1915(e), the district court did not err when it *sua sponte* resurrected Nofziger's forfeited *Heck* defense at the summary judgment stage.

## IV. FAILURE TO STATE A CLAIM

Because the PLRA authorized the district court to evaluate whether *Heck* barred Hebrard's claim of its own accord, we must assess whether it properly dismissed Hebrard's complaint for failure to state a claim for relief. We will affirm the district court's dismissal of his claim only if the *Heck* bar is obvious from the face of his complaint. *Washington*, 833 F.3d at 1056.

The *Heck*-bar, or required favorable termination rule, is a rule of preclusion named after *Heck v. Humphrey*—the Supreme Court case that outlined the doctrine. *Heck* involved a state criminal defendant who filed a § 1983 damages claim for a purportedly unlawful arrest and investigation that resulted in his manslaughter conviction. 512 U.S. at 478–79. The Court held that the defendant's § 1983 action was properly dismissed because his state court conviction, which had not yet been overturned, precluded his civil claim for damages. *Id.* at 483. It adopted this rule because the defendant's § 1983 claim was analogous to the malicious prosecution tort. *Id.* at 484. At common law, to maintain a malicious prosecution claim (i.e., a claim for "damages for confinement [improperly] imposed pursuant to legal process"), a party had "to prove the unlawfulness of his conviction or confinement." *Id.* at 484, 486. The requirement that a criminal defendant first obtain a favorable termination of his conviction before filing a malicious prosecution claim ensured that he could not collaterally

---

of his claim as *Heck*-barred was not prejudicial.

"challeng[e] the validity of [an] outstanding criminal judgment[]" via a "civil tort action[]." *Id.* at 486. As a result, the *Heck* Court held that to prevent a dismissal of his cause of action, a plaintiff, whose § 1983 claim arose from "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," needed to prove that he had first overturned his conviction or sentence in another proceeding. *Id.* at 486–87.

The Supreme Court extended the application of *Heck* to the prison context in *Edwards v. Balisok*. 520 U.S. 641 (1997). The prisoner in *Edwards* filed a § 1983 cause of action claiming that his prison disciplinary conviction violated his Fourteenth Amendment due process rights because he was "denied the opportunity to put on a defense" or "to present [] extant exculpatory evidence." *Id.* at 643, 646–47. He was found guilty of violating four prison rules for which he was sentenced to spend 10 days in isolation, to spend 20 days in segregated housing, and to lose 30 days of earned time that would have shortened his sentence.[6] *Id.* at 643. The prisoner in *Edwards* sought a declaration that the procedures used at his disciplinary hearing violated his due process rights and requested "compensatory and punitive damages for use of the unconstitutional procedures." *Id.* But notably, he had "amended [his] complaint [so as] not [to] request restoration of the lost credits." *Id.* at 643–44. Despite the prisoner's express attempt to avoid challenging the duration of his confinement in his complaint, the *Edwards* Court held that *Heck* barred his due process challenge to his disciplinary conviction. *Id.* at 646. Namely, because "[t]he principal procedural defect complained of by

---

[6] As explained in further detail below, *see infra* Section IV.A, earned-time credits generally affect the length of an inmate's sentence.

[the prisoner] would," if proven, demonstrate the unconstitutionality of the procedures used at his disciplinary hearing, it would "necessarily imply the invalidity of the deprivation of his [earned]-time credits" in addition to the impropriety of his placement in isolated and segregated housing. *Id.* at 646. Thus, after *Edwards*, *Heck* applies to a prisoner's due process challenge to his disciplinary conviction that claims the "conviction was wrongful," even if he "does not seek damages directly attributable to [his] . . . confinement." *Id.* (quoting *Heck*, 512 U.S. at 486 n.6).

As explained in more detail below, we find that under this case law, it is clear from the face of Hebrard's complaint that his claim is *Heck*-barred. His claim is materially similar to the claim in *Edwards* that was found to be barred by *Heck*.

## A. Oregon's Earned-Time Credits Reduce Inmates' Sentences

Before we evaluate whether *Heck* bars Hebrard's claim, we must resolve a preliminary issue. While Hebrard does not argue that the loss of his earned-time credits had no effect on the duration of his confinement, *Heck* cannot apply to Hebrard's claim unless the prison's revocation of his earned-time credits "ha[d] an effect on 'the duration of time to be served.'" *Nettles v. Grounds*, 830 F.3d 922, 928–29, 929 n.4 (9th Cir. 2016) (en banc) (quoting *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004)). Thus, we must first ascertain whether Hebrard could have used the lost earned-time credits to reduce his sentence.

Under Oregon law, "[earned-]time credits [] *have the effect of reducing the sentence served*." *Burns v. Newell*, 507 P.2d 414, 415 (Or. Ct. App. 1973) (emphasis added); *accord Oregon v. Berger*, 392 P.3d 792, 796 (Or. Ct. App. 2017) (holding that the statutory scheme that governs earned-time

credits constitutes "a sentence reduction program" (citation omitted)). Only those prisoners serving sentences amenable to a reduction by law are eligible to obtain these credits. *Oregon ex rel. Engweiler v. Cook*, 133 P.3d 904, 908 & n.7 (Or. 2006). And "'earned time' may [not] be granted by the [Oregon] Department of Corrections ... [unless] the sentencing court specifically orders that the defendant is eligible for such a reduction." *Berger*, 392 P.3d at 796. In light of this authority, Hebrard could not have obtained his earned-time credits unless he were legally eligible to have his sentence reduced.[7] *See generally* Or. Admin. R. 291-097-0240 (outlining the periodic review of an inmate's file during which a prison official must certify whether the inmate was entitled to receive earned-time credits for good behavior).

---

[7] For this reason, *Nettles v. Grounds* does not require a reversal of the district court's dismissal of Hebrard's claim. In *Nettles*, a California inmate serving a life sentence with the possibility of parole sought to overturn a disciplinary hearing to restore the earned-time credits revoked as a sanction for his rule violations. 830 F.3d at 924–25, 927. We held that Nettles's claim could not proceed in habeas. *Id.* at 925. This is because under California law, the restoration of Nettles's earned-time credits would not have had any effect on his sentence. *Id.* at 934 n.12. Rather, his release from confinement was dependent on *the discretionary decision of the parole board*. *Id.* at 935.

*Nettles* is a straightforward application of *Heck*. If a prisoner's claim does not affect the length of his confinement, *Heck* does not apply. *Cf. Muhammad*, 540 U.S. at 754–55. In contrast, as explained above, Hebrard could not obtain earned-time credits under Oregon law unless his sentence were legally amenable to a reduction. *Berger*, 392 P.3d at 796. Thus, unlike the disciplinary conviction at issue in *Nettles*, Hebrard's conviction had the effect of lengthening the duration of his confinement. As a result, *Nettles* is simply not factually analogous to the case at bar and thus does not govern our resolution of this appeal.

Certainly, an Oregon state official could have made a mistake. But "in the absence of clear evidence to the contrary, courts [are to] presume that [public officials] have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926); *accord Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202–03 (9th Cir. 1989). This presumption of regularity applies equally to a state official's compliance with state law. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) (applying the presumption of regularity to a state prosecutor's charging decisions under state law). Because Hebrard does not contest that the earned-time credits shortened his sentence and given there is no record evidence to the contrary, we conclude, under the presumption of regularity, that Hebrard received earned-time credits because they reduced the duration of his confinement.[8] Thus satisfied that the revocation of Hebrard's earned-time credits thereby extended "the duration of time to be served," we now can proceed to the heart of the *Heck* analysis. *Muhammad*, 540 U.S. at 754–55.

---

[8] The dissent maintains that the restoration of Hebrard's earned-time credits would not necessarily reduce the duration of his confinement, but it reaches this conclusion by relying on argumentation that Hebrard never raised. The party presentation rule therefore bars our consideration of the hypothetical scenarios the dissent presents. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("'[I]n both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'") (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised before the district court.").

## B. Hebrard's Complaint Is *Heck*-Barred

As the Supreme Court has summarized, under *Edwards*, a prisoner's § 1983 claim is *Heck*-barred "*if* success in th[e] action would necessarily demonstrate the invalidity of . . . [the] duration" of a prisoner's confinement "no matter the relief sought."[9] *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). So long as the claim "*indirectly* [seeks] a judicial determination that necessarily implies the unlawfulness of the [duration of the] State's custody," *Heck* and *Edwards* require his § 1983 cause of action to be dismissed—"only habeas corpus (or similar state) remedies" can be used to obtain such a ruling. *Id.* at 81. Thus, if Hebrard's complaint makes clear that he wants to obtain a judicial determination that his disciplinary "conviction was wrongful," his claim is barred by *Heck* even though he did not request "damages directly attributable to" the loss of his earned-time credits in his prayer for relief. *Edwards*, 520 U.S. at 646 (quoting *Heck*, 512 U.S. at 486 n.6). A plain reading of Hebrard's complaint reveals that his § 1983 claim seeks such a ruling.

According to Hebrard's complaint, his desired resolution of this § 1983 litigation is to have his conviction for the three

---

[9] For this reason, Hebrard's contention that his claim cannot be barred by *Heck* because he "chose not to challenge his loss of [earned]-time credits" by failing to request damages for that penalty is without merit. The Supreme Court expressly rejected this position in *Edwards*. It held that even though the prisoner's "§ 1983 action [] d[id] not seek damages directly attributable to" his loss of earned-time credits, he was nonetheless "subject to the limitation announced in *Heck*." *Edwards*, 520 U.S. at 646. The Court explained that *Heck* still applied because if the prisoner prevailed on his legal theory that his disciplinary hearing employed invalid procedures, it "would necessarily imply that [hi]s [disciplinary] conviction was wrongful" and that his earned-time credits should not have been revoked. *Id.*

rule violations overturned.  Namely, Hebrard claims that his procedural due process rights were violated and that his disciplinary conviction was unlawful because Nofziger purportedly lacked any evidentiary support for finding him guilty of the infractions.  Hebrard bolsters this claim with allegations that he was denied any opportunity to put on a defense to the charges levied against him.  Nofziger allegedly refused "to call or [to] investigate [his proffered] witnesses," who were "indirectly . . . or directly related to the misconduct and charge[d]" rule violations.  And Nofziger allegedly did not "provide certain requested documents prior [to] or during [the] hearing," let alone any "meaningful explanation for [the] finding of guilt."  Namely, Hebrard alleged he was convicted even though "the dispositive items of proof" were absent from the disciplinary record.

Because of these procedural defects, Hebrard requests relief from "[t]he actions of Defendant Nofziger . . . [that] f[ound] him guilty of Racketeering, Drug Possession and Distribution I with no evidence to support [the] charges."  Put another way, Hebrard wants his disciplinary conviction to be set aside as unlawful because the disciplinary proceeding failed to comport with the dictates of due process.[10]  If Hebrard were to prove that Nofziger lacked an

---

[10] This straightforward conclusion follows from the fact that the allegations in Hebrard's complaint strike at the heart of the disciplinary investigation and hearing itself—rather than at any particular procedural defects related to the imposition of specific sanctions.  For this reason, we reject Hebrard's argument on appeal that his complaint challenges only those rule violations that are unrelated to his earned-time credits.  As the district court succinctly stated, Hebrard alleged "there was *one* investigation, *one* disciplinary hearing, and *one* set of disciplinary convictions."  According to the plain language in Hebrard's complaint,

evidentiary basis to find him guilty of the rule violations and that he was wholly denied an opportunity to present a defense, all three of his guilty convictions would need to be overturned as unlawful. *Edwards*, 520 U.S. at 646–47 (The "deni[al of] the opportunity to put on a defense" constitutes an "obvious procedural defect[ that has led] state and federal courts" to set aside prison convictions.). And given the sanctions were a collective penalty for all of Hebrard's prison infractions, to reverse the convictions as unlawful "necessarily impl[ies]" that the sanctions imposed were unlawful as well.[11] *See id.* at 645–47. Thus, a favorable legal ruling on Hebrard's due process claim encompasses a determination that the prison had no lawful basis to impose any sanctions. And were the prison to lack a valid basis to impose any sanctions, its revocation of Hebrard's earned-time credits—and resulting extension of his sentence, *see*

---

each of the three convictions lacks "evidence to support the charges" due to the constitutionally defective procedures employed—Nofziger failed to provide *any* "requested documents" or "video evidence," "to allow *any* testimony," to include *any* "arguments . . . [or] defense[s]" in the final disciplinary report, or to explain the "denial of an investigation." Despite the more limited request for damages, Hebrard plainly seeks a determination that his disciplinary convictions must be expunged *in toto*.

[11] That a successful challenge to the entire disciplinary proceeding would overturn all of the sanctions imposed is confirmed by the prison's disciplinary report. This report, which is judicially noticeable, *see Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them."), reveals that the sanctions were applied *collectively* and that all of the rule violations were merged together. Thus, were a court to overturn any of the rule violations, it would also necessarily invalidate all of the sanctions imposed.

*supra* Section IV.A—would necessarily be deemed unlawful.

Simply put, Hebrard's due process claim "*indirectly* [seeks] a judicial determination that necessarily implies the unlawfulness of the [duration of the] State's custody." *Wilkinson*, 544 U.S. at 81. A successful challenge to the validity of the procedures employed during his disciplinary hearing necessarily encompasses a determination that the prison could not validly impose *any* sanctions—including the revocation of his earned-time credits. *Id.*; *accord Edwards*, 520 U.S. at 646–47. As a result, because Hebrard's claim plainly calls into question the proper duration of his confinement, Hebrard is required under *Heck* to proceed in habeas first before he can request damages under § 1983.**[12]** *Edwards*, 520 U.S. at 646, 648; *see Nettles*, 830 F.3d at 928–29. His failure to seek such habeas relief means his suit must be dismissed as *Heck*-barred. 512 U.S. at 489–90.

### C. Hebrard's Arguments Why *Heck* Does Not Apply Lack Merit

While the *Heck*-bar is clear from the face of his complaint, Hebrard argues there are two reasons why *Heck* should not apply to his case. Neither has merit.

---

[12] Put another way, Hebrard's outstanding disciplinary conviction, which legally supports the validity of the revocation of Hebrard's earned-time credits, precludes this § 1983 claim because it could result in inconsistent judgments regarding the validity of the sanctions imposed. *See Heck*, 512 U.S. at 484–46, 484 n.4. Thus, *Heck* requires Hebrard's challenge to the legal basis for the prison's revocation of his earned-time credits to be resolved in habeas where his conviction can be overturned, rather than to have his conviction indirectly challenged in a § 1983 action. *Id.*; *Nettles*, 830 F.3d at 928–29 (citing *Muhammad*, 540 U.S. at 754–55).

### 1. *Peralta v. Vasquez* conflicts with *Edwards*

Hebrard first contends that we should follow the Second Circuit's analysis in *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). Akin to the case before us, the prisoner in *Peralta* brought a due process challenge to his prison disciplinary hearing, which had resulted in sanctions affecting both the duration and conditions of his confinement. *Id.* at 100. The Second Circuit declined to apply *Heck* to the prisoner's § 1983 claim because the court concluded that the prisoner's decision not to request the reinstatement of his earned-time credits in his complaint implied that his claim did not challenge the duration of his confinement. *Id.* at 104.

But *Peralta* is of no help to Hebrard because it plainly conflicts with *Edwards*. As noted above, *Edwards* resolved a materially similar claim to the one in Hebrard's complaint. Both Hebrard and the prisoner in *Edwards* had their earned-time credits revoked and were placed in segregated housing for violating several prison rules. 520 U.S. at 643. And like Hebrard, the prisoner in *Edwards* alleged that "he was completely denied the opportunity to put on a defense through specifically identified witnesses who possessed exculpatory evidence." *Id.* at 646. Moreover, neither Hebrard nor the prisoner in *Edwards* requested damages for or the restoration of their earned-time credits. *Id.* at 643–44. In fact, the prisoner in *Edwards* affirmatively "amended [his] complaint [so as] not [to] request" relief related to the "lost credits." *Id.* But despite the prisoner's affirmative decision in *Edwards* not to recover for his lost earned-time credits, the Supreme Court nonetheless held that the complaint was barred by *Heck*. *Id.* at 648.

Thus, contrary to the position taken by the Second Circuit in *Peralta*, 467 F.3d at 104, a prisoner's conscious decision not to request relief for the loss of his earned-time credits does not mean his claim does not challenge the validity of the duration of his confinement. *See Skinner v. U.S. Dep't of Justice & Bureau of Prisons*, 584 F.3d 1093, 1100 (D.C. Cir. 2009) (affirming the dismissal of a challenge to a prison disciplinary hearing under *Heck* because "recovery for the 'other, separate disciplinary harms' [unrelated to the inmate's sentence] depend[ed] on overturning the adverse determination that also led to his loss of [earned]-time credits[—]if [he] were to win damages for the former, he would necessarily have demonstrated the invalidity of the latter"). Rather, as the *Edwards* Court explained, a prisoner's due process challenge "to the procedures" employed at his disciplinary hearing "necessarily impl[ies] the invalidity of the deprivation of his [earned]-time credits"—even if he affirmatively declines to bring a direct challenge to "the result[ing]" revocation of his earned-time credits—so long as the alleged "procedural defect," if proven, would demonstrate the "invalidity of the judgment" in his disciplinary hearing. 520 U.S. at 645–47; *cf. Haywood v. Hathaway*, 842 F.3d 1026, 1029 (7th Cir. 2016) (holding that *Heck* and *Edwards* created "a version of issue preclusion (collateral estoppel), under which the outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent civil judgment").

That is precisely what Hebrard's due process claim demands. *See supra* Section IV.B. He seeks a judicial determination that he was improperly adjudged guilty and thereby impermissibly sanctioned for baseless rule violations because of Nofziger's unconstitutional actions: Nofziger's alleged refusal to call witnesses, to present

evidence of wrongdoing, to conduct an investigation, or to permit Hebrard to put on a defense.  Because *Edwards* resolved a due process challenge that is factually analogous to the claim in Hebrard's complaint, it compels the result we reach here.  Namely, although Hebrard does not seek to recover for his lost earned-time credits, his claim is barred by *Heck* because he challenges the constitutional validity of his disciplinary conviction, which constitutes an implied challenge to the validity of the sanctions imposed as a result. *Edwards*, 520 U.S. at 643–46.

### 2. Hebrard had an *effective* constitutional remedy

Lastly, Hebrard argues that *Heck* should not apply because he supposedly has no other remedy at this time. This argument cannot be credited.

While a habeas challenge to the revocation of his earned-time credits would currently be untimely, Hebrard identifies no legal impediments at the outset that barred him from filing a habeas petition instead of this § 1983 claim.[13]  Thus, the current time-bar that prevents him from obtaining habeas relief does not mean he lacks an effective remedy.  It simply means he did not timely seek the proper remedy.  *Guerrero*

---

[13] Namely, Hebrard could have overturned his disciplinary hearing in habeas, *see Barrett v. Belleque*, 176 P.3d 1272, 1278–79 (Or. 2008); *Burns*, 507 P.2d at 414–15, and then filed a subsequent § 1983 action to recover damages for the other sanctions imposed, *Edwards*, 520 U.S. at 643, 645–46.  Because his § 1983 claim would not accrue until he overturned the disciplinary hearing, the subsequent action would be timely.  *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019). Furthermore, any legal determination in the habeas proceeding would be "afforded issue-preclusive" effect in the § 1983 action.  *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014).  Thus, Hebrard's assertion that he is "left with no remedy" is not well-taken.

*v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) ("[T]hough habeas relief . . . may be 'impossible as a matter of law,' . . . [Hebrard] cannot now use his 'failure timely to pursue habeas remedies' as a shield against the implications of *Heck*.").

**\*\*\***

The bottom line: *Heck* bars Hebrard's suit. It is clear from the face of his complaint that his claim necessarily implicates the validity of the prison's revocation of his earned-time credits, which revocation extended his stay in prison. The district court correctly applied *Heck* to this case and dismissed Hebrard's § 1983 claim.

## V.  CONCLUSION

For all the foregoing reasons, we conclude that Hebrard's complaint was properly dismissed as barred by *Heck*. The district court's *sua sponte* dismissal of his *in forma pauperis* complaint for failure to state a claim was authorized by the PLRA. And this mandatory dismissal was warranted given it is clear from the face of the complaint that Hebrard's due process claim, if successful, would necessarily imply the invalidity of the prison's revocation of his earned-time credits—a claim that must proceed in habeas. That Hebrard has not obtained any such habeas relief means his § 1983 claim is *Heck*-barred. Accordingly, we affirm the district court's dismissal of Hebrard's § 1983 cause of action.

**AFFIRMED.**

SUNG, Circuit Judge, dissenting:

Plaintiff Alexander Hebrard, an Oregon state prisoner, filed a claim under 42 U.S.C. § 1983 challenging a prison disciplinary action that resulted in various sanctions, including revocation of 27 days of earned-time credits. The district court *sua sponte* dismissed Hebrard's § 1983 claim for failure to state a claim based on *Heck v. Humphrey*, 512 U.S. 477 (1994). I agree with the majority that *Heck* is an affirmative defense, and that the defendant, Nofziger, bears the burden of proving it applies. I also agree with the majority that Hebrard's § 1983 action, if successful, would necessarily imply the invalidity of the revocation of Hebrard's earned-time credits—even though his complaint does not seek restoration of those credits. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, I disagree with the majority's conclusion that the district court properly dismissed Hebrard's claim as *Heck*-barred.

"*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.'" *Nettles v. Grounds*, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) (quoting *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) and citing *Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014)). Further, restoration of a prisoner's earned-time credits does not, in all cases, necessarily affect the duration of time to be served. *See, e.g.*, *Nettles*, 830 F.3d at 934–35 (determining that restoration of Nettles' postconviction credits "would not necessarily lead to immediate or speedier release").

Accordingly, the question at the heart of this case is: Would restoration of Hebrard's earned-time credits necessarily lead to his immediate or speedier release from custody?

On this record, we simply do not know the answer to that question. Under Oregon law, it is possible that Hebrard is receiving earned-time credits that cannot lead to his immediate or speedier release. And we can't rule out that possibility because we don't know what sentence or sentences Hebrard is serving, or what his underlying conviction or convictions are. Because we can't be certain that restoration of Hebrard's earned-time credits would necessarily affect the duration of his custody, we can't be certain that his claim is *Heck*-barred.

Below, I first explain in more detail why, under *Nettles*, a claim that would effectively restore a prisoner's earned-time credits is not necessarily *Heck*-barred. Second, I explain why we can't be certain, on this record and under Oregon law, that restoration of Hebrard's earned-time credits will necessarily have the required effect on his duration of custody. Third, I explain that the district court erred in two ways: (1) by concluding that Hebrard's claim is *Heck*-barred, and (2) by *sua sponte* dismissing Hebrard's § 1983 claim under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim, even though it is not obvious from the face of the complaint that the claim is barred by *Heck*. Finally, I explain how dismissing a § 1983 claim—without certainty that it would, if successful, necessarily affect the duration of confinement—is at odds with precedent and could have unfair consequences for Hebrard and other prisoners.

## BACKGROUND

Hebrard challenges a prison disciplinary action that resulted in confiscation of $1,050 from Hebrard's trust account, a $100 fine, disciplinary segregation for 120 days, limited visitation for a year, and retraction of 27 days of

earned-time credits. He filed a handwritten, pro se § 1983 complaint in September 2019, claiming that he was denied due process under the Fourteenth Amendment during the disciplinary proceeding.[1] Hebrard's complaint seeks monetary damages, but it does not seek restoration of the revoked earned-time credits.[2]

Nofziger filed an answer to Hebrard's complaint, raising the affirmative defenses of qualified immunity and PLRA exhaustion—but Nofziger did not mention *Heck*. Nofziger also filed a motion for summary judgment—and again, Nofziger did not mention *Heck*. After Nofziger briefed the summary judgment motion, however, the district court raised *Heck sua sponte* and ordered supplemental briefing. In the supplemental briefing, Nofziger still did not provide any information about Hebrard's underlying conviction(s) or the sentence(s) he is serving. Despite the absence of such information in the record, the district court concluded that Hebrard's § 1983 claim is *Heck*-barred and exercised its authority under the PLRA, 28 U.S.C. § 1915(e)(2)(B), to *sua sponte* dismiss Hebrard's complaint for failure to state a claim.

---

[1] It is undisputed that Hebrard's § 1983 claim seeks to challenge only the prison disciplinary action and not Hebrard's underlying state criminal conviction.

[2] Even though Hebrard does not explicitly seek restoration of the earned-time credits in his complaint, I agree with the majority that Hebrard's challenge to the disciplinary action, if successful, would also invalidate the revocation of his earned-time credits.

**DISCUSSION**

**I**

As noted above, I agree with the majority that Hebrard's § 1983 claim, if successful, would necessarily imply the invalidity of his disciplinary hearing and effectively restore his earned-time credits. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, that does not necessarily mean that Hebrard's § 1983 claim is *Heck*-barred.

In *Heck v. Humphrey*, the Court held that a plaintiff could not bring a § 1983 action "that necessarily require[d] the plaintiff to prove the unlawfulness of his conviction or confinement," unless the plaintiff first proved that the conviction or sentence was eliminated, including "by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). "This favorable termination rule polices the intersection of the two most fertile sources of federal-court prisoner litigation—§ 1983, and the federal habeas corpus statute, by ensuring that a court cannot address a § 1983 claim if doing so would require it to first resolve a claim that falls within the core of habeas corpus." *Nettles*, 830 F.3d at 928 (cleaned up).

In *Edwards*, the Court held that a state prisoner's § 1983 claim regarding a disciplinary proceeding that necessarily implied the invalidity of his loss of postconviction credits "fell within habeas's exclusive domain and was barred by the rule in *Heck*." *Nettles*, 830 F.3d at 928 (citing *Edwards*, 520 U.S. at 644, 648). But "[t]he Court later clarified, in *Muhammad v. Close*, that such challenges to disciplinary proceedings are barred by *Heck* only if the § 1983 action would be 'seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be

served.'" *Id.* at 928–29 (quoting 540 U.S. at 754–55) (alteration in original).

Hebrard's § 1983 claim has no bearing on his underlying conviction(s) or prison sentence(s) (whatever they may be)—at most, his claim could restore his 27 days of earned-time credits. Our en banc decision in *Nettles* addressed a similar claim and clarified several principles regarding the scope of habeas jurisdiction, § 1983, and the application of *Heck* to such claims, that are important in this case.

Like Hebrard, Nettles was a state prisoner who challenged a prison disciplinary action that resulted in the revocation of postconviction credits. 830 F.3d at 924–27. Unlike Hebrard, however, Nettles challenged his disciplinary action and sought restoration of his postconviction credits in a habeas petition. *Id.* at 927. Although Nettles' claim would effectively restore his postconviction credits, we determined that his claim would not necessarily affect the duration of his custody. *Id.* at 934–35. Consequently, we concluded that Nettles' claim was not "within the core of habeas," and that the district court properly dismissed Nettles' habeas petition for lack of jurisdiction. *Id.* at 935. Further, we held that § 1983 is the "exclusive vehicle" for such claims about prison life "that are not within the core of habeas." *Id.* at 932–33. A claim that may only be brought under § 1983 because it is not within the core of habeas should not be dismissed under *Heck*. *See Wilkinson*, 544 U.S. at 82–84 (reversing *Heck* dismissal of prisoners' § 1983 claims because "neither lies at 'the core of habeas corpus'" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973))).

*Nettles* clarifies that a claim that would effectively restore postconviction credits is not within the core of

habeas—and therefore, not *Heck*-barred—unless it would necessarily affect the duration of custody. *See Nettles*, 830 F.3d at 929 n.4 ("*Heck* applies only to administrative determinations," including prison disciplinary actions, "that 'necessarily' have an effect on 'the duration of time to be served.'" (quoting *Muhammad*, 540 U.S at 754–55, and citing *Wilkerson*, 772 F.3d at 840)).

An "effect on the duration of custody" means "immediate or earlier release from confinement." *Id.* at 935; *see also Wilkinson*, 544 U.S. at 82–84 (clarifying that *Heck* bars only claims that would result in "immediate release from confinement or a shorter stay in prison").

"Necessarily" in this context means "inevitable." *See Wilkinson*, 544 U.S. at 82 (holding claims did not lie at "the core of habeas corpus" because "claims would not inevitably lead to release"); *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) ("Success in [Skinner's] suit for DNA testing would not 'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable[.]"); *Thornton v. Brown*, 757 F.3d 834, 843 (9th Cir. 2013) ("We have held that a claim does not necessarily imply the invalidity of a conviction or sentence under *Heck* unless its success will inevitably call into question the state court judgment that led to the plaintiff's custody." (quotation marks omitted)). Even claims that "would be likely to lead to an earlier release" or "*could potentially* affect the duration of a prisoner's confinement" are not within the core of habeas. *See Nettles*, 830 F.3d at 933–34 (quotation marks omitted) (emphasis in original) (overruling *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), and *Docken v. Chase*, 393 F.3d 1024, 1031 (9th Cir. 2004)).

*Nettles* also makes clear that in some circumstances, a claim that would restore a prisoner's earned-time credits would not necessarily affect the duration of their custody. Restoration of a prisoner's earned-time credits might lead to a prisoner's immediate or earlier release from custody—but it does not necessarily do so in every case. For example, in *Nettles*, we determined that restoration of his postconviction credits would not necessarily have the required effect because Nettles was serving an indeterminate sentence, expungement of his disciplinary infraction would not necessarily lead to a grant of parole, and the panel would not calculate a release date that could be affected by the postconviction credits. 830 F.3d at 934–35.

Thus, when a prisoner's claim challenges a disciplinary action that revoked postconviction credits, we must determine on a case-by-case basis whether that claim is within the core of habeas. More specifically, we must determine whether, considering the prisoner's sentence(s) and state law, restoration of the prisoner's credits would inevitably lead to the prisoner's immediate or speedier release. "If the invalidity of the disciplinary proceedings, and therefore the restoration of [postconviction] credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas" and the claim *must* be "brought in § 1983." *Nettles*, 830 F.3d at 929.

Importantly, we have reversed *Heck* dismissals when we couldn't tell from the record whether restoration of a prisoner's postconviction credits would necessarily affect the length of time to be served. *See, e.g.*, *Delgado v. Gonzalez*, 686 F. App'x 434, 435 (9th Cir. 2017) (citing *Nettles* and rejecting application of the *Heck* bar because "[o]n this record, we do not know whether Delgado's rules violation and loss of sixty days of good-time credit would

*necessarily* affect the length of time he must serve" (emphasis in original)); *Brownlee v. Murphy*, 231 F. App'x 642, 644 (9th Cir. 2007) ("If, under the applicable scheme of state law and regulation, this revocation [of good-time credits] directly and necessarily increased the duration of Brownlee's confinement, . . . the district court's dismissal [under *Heck*] would be proper. However, we cannot be sure on the record before us of the effect of any such revocation under the applicable legal regime."). As explained below, we should reverse the dismissal of Hebrard's claim for the same reason.

## II

We can't tell from the record whether restoration of Hebrard's earned-time credits would necessarily affect the length of time he must serve. Therefore, we can't tell whether his claim was properly dismissed under *Heck*.

Hebrard's pro se, handwritten complaint indicates that earned-time credits were deducted as a result of the challenged prison disciplinary sanction. But the complaint contains no other information about what Hebrard's underlying conviction(s) is/are, or the type or length of sentence(s) he is serving. That critical information is not anywhere else in the record—as Nofziger conceded multiple times at oral argument. Oral Arg. at 17:00, 22:32, 23:54, 28:30. Even after the district court ordered supplemental briefing on the application of *Heck*, Nofziger did not provide the factual and state law information needed to determine whether restoration of Hebrard's earned-time credits would necessarily lead to his immediate or speedier release.

The majority assumes that restoration of Hebrard's earned-time credits will necessarily affect the duration of his custody because, under Oregon law, prisons cannot award

earned-time credits unless a prisoner has an earned-time credit-eligible sentence. The majority ignores, however, at least two circumstances under which it is possible for Oregon prisoners to lawfully receive earned-time credits that can't have any effect on their release date:[3]

---

[3] I disagree with the majority's assertion that this dissent violates the party presentation rule by presenting hypothetical scenarios that Hebrard never identified. Maj. Op. 16 n.8. The majority and I agree it is Nofziger's burden to prove that the revocation of Hebrard's earned-time credits necessarily affected his duration of custody. The hypothetical scenarios that the majority declines to consider merely show that Nofziger has not met that burden.

Additionally, all the issues addressed in this dissent were presented by the parties. Hebrard's opening brief states that the issues presented include whether the district court erred "when it *sua sponte* dismissed Mr. Hebrard's due process claim as barred by *Heck* even though his claim does not necessarily implicate the fact or duration of his confinement[.]" Dkt. 10 at 5 (Issue Presented #2). Hebrard also argues that the district court erred because Nofziger bears the burden of proving *Heck* applies (Dkt. 10 at 13–14) and the *Heck* bar is not obvious on the face of the complaint (Dkt. 10 at 21–22). Further, Hebrard argues that "ambiguity over whether an action necessarily implicates the fact or duration of the inmate's sentence precludes dismissal." Dkt. 10 at 24–25 (citing and discussing *Brownlee v. Murphy*, 231 F. App'x 642, 644 (9th Cir. 2007) and *Delgado v. Gonzales*, 686 F. App'x 434, 434–35 (9th Cir. 2017)).

Moreover, the majority recognizes that to resolve the issues presented, we "must resolve [the] preliminary issue" of whether the loss of earned-time credits had an effect on the duration of Hebard's confinement "because *Heck* cannot apply to Hebrard's claim unless the prison's revocation of his earned-time credits 'ha[d] an effect on the duration of time to be served.'" Maj. Op. 14 (quoting *Nettles*, 830 F.3d at 928–29 & n.4 (internal quotation marks omitted)). I dissent because I disagree with the majority's resolution of this preliminary issue, but I agree that we must resolve it. And, to do so, both the majority and this dissent consider state law and arguments that were not explicitly

(1) Hebrard could be in the exact same position as
Nettles. In Oregon, a prisoner serving an indeterminate life
sentence may still receive earned-time credits, but the loss or
restoration of those credits will not necessarily affect the
prisoner's duration of custody because, as in *Nettles*, any
release date is ultimately set at the discretion of the parole
board. *See State ex rel. Engweiler v. Cook ("Engweiler IV")*,
133 P.3d 904 (Or. 2006); *Engweiler v. Persson ("Engweiler
VIII")*, 316 P.3d 264 (Or. 2013). In *Engweiler IV*, the
Oregon Supreme Court held that an Oregon state prisoner
serving an indeterminate life sentence for a crime committed
on or after November 1, 1989, is eligible to receive earned-
time credits. *See Engweiler VIII*, 316 P.3d at 270
(summarizing the holding of *Engweiler IV*). Then, in
*Engweiler VIII*, the Court held that those earned-time credits
do not necessarily determine a prisoner's release date.
Engweiler argued that he was entitled to be immediately
released because application of his earned-time credits to his
initial board-estimated release date meant that he should
have already been released from custody. *Id.* at 273. The
Court, however, rejected that argument and held that even

---

presented by the parties. *Compare* Maj. Op. 14–16 (discussing and
relying on *Burns v. Newell*, 507 P.2d 414, 415 (Or. Ct. App. 1973);
*Oregon v. Berger*, 392 P.3d 792, 796 (Or. Ct. App. 2017); and *Oregon
ex rel. Engweiler v. Cook*, 133 P.3d 904, 908 & n.7 (Or. 2006)), *with*
Dkt. 21 (Nofziger's Answering Brief). Yet, the majority asserts that only
this dissent violates the party presentation rule. Either both the majority
and the dissent are violating the party presentation rule, or neither of us
are. In my view, neither of us are. Where, as here, the issue has been
presented by the parties, our analysis of that issue need "not perfectly
track the arguments [a party] presents in her briefing." *Machowski v. 333
N. Placentia Prop., LLC*, 38 F.4th 837, 843 (9th Cir. 2022); *see also
United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020) ("[A]
court is not hidebound by the precise arguments of counsel[.]").

when a prisoner could be released based on earned-time credits applied to their estimated release date, the Oregon parole board has the discretion to keep the prisoner in custody and schedule their actual release for a future date. *Id.* at 274–75. That is, the prisoner's actual release date (if any) would ultimately be determined by the parole board's discretionary review process, which "exists to ensure that offenders are not released to parole unless and until the board is satisfied that their release is consistent with community safety." *Id.*

In this case, Nofziger conceded at oral argument that we have no way of knowing on this record that Hebrard is *not* serving an indeterminate sentence. This means it is possible that Hebrard (like Engweiler and Nettles) is serving an indeterminate sentence that is eligible for earned-time credits but a parole board retains discretion to decide when to release him (if ever). If so, then restoration of Hebrard's earned-time credits would *not* necessarily lead to his immediate or earlier release, and his claim is not *Heck*-barred.

(2) Under Oregon law, a prisoner can be serving two (or more) sentences—one that is eligible for earned-time credits, and one that is not. *Samson v. Brown*, 486 P.3d 59, 64 (Or. Ct. App. 2021) (interpreting ORS 137.635, which makes sentences for certain crimes ineligible for earned-time credits); *Woods v. Hendricks*, 537 P.3d 974, 977–79 (Or. Ct. App. 2023) (interpreting ORS 137.700, which also makes certain sentences ineligible for earned-time credits). A prisoner in this circumstance *must* be awarded earned-time credits on the eligible sentence—even though the earned-time credits won't have any effect on the prisoner's ineligible sentence. *Samson*, 486 P.3d at 64 ("If a person is serving prison time on two sentences simultaneously, one of

which is subject to ORS 137.635 and one of which is not, then the earned-time prohibition in ORS 137.635 applies at all times to the sentence that is subject to ORS 137.635, but it never applies to the sentence that is not subject to ORS 137.635."); *Woods*, 537 P.3d at 977–79 (agreeing with *Samson* and reaching same conclusion regarding ORS 137.700).

If a prisoner is serving credit-eligible and -ineligible sentences concurrently and the credit-eligible sentence is shorter than the ineligible one, then the prison is legally required to award the prisoner earned-time credits on the shorter sentence, but those earned-time credits would have no effect on the prisoner's release date. Because revocation of those credits would have no effect on the length of time to be served, a § 1983 claim that would effectively restore those credits would not lie within the core of habeas and would not be *Heck*-barred.

In Oregon, it is reasonably possible that prisoners are serving such concurrent sentences. For example, a prisoner could receive a 60-month sentence for first degree burglary (ineligible for credits under ORS 137.635 if the prisoner is a repeat offender with a qualifying previous conviction), to be served concurrently with a 40-month sentence for attempted second-degree assault (eligible for credits).[4] For another example, a prisoner could receive a 70-month sentence for assault in the second degree (ineligible for credits under

---

[4] This example is close to the circumstances presented in *Samson*: Samson received a credit-ineligible 60-month sentence for first degree burglary, to be served concurrently with a credit-eligible 40-month sentence for attempted second degree robbery and a credit-eligible 40-month sentence for attempted second degree assault. 486 P.3d at 60.

ORS 137.700), to be served concurrently with a 24-month sentence for a lesser offense that is eligible for credits.[5]

We can't rule out the real possibility that Hebrard is serving such concurrent sentences because the record contains no information about Hebrard's convictions or sentences. Consequently, we can't be certain that Hebrard's claim is *Heck*-barred.

## III

The district court erred in two ways.

First, the district court erred by concluding that Hebrard's § 1983 claim is barred under *Heck*. For the reasons explained above, the district court could not know, on this record, that restoration of Hebrard's earned-time credits would necessarily lead to his immediate or speedier release. If not, his claim does not sound in the core of habeas, and it is not *Heck*-barred.

Second, the district court erred by *sua sponte* dismissing Hebrard's complaint for "failure to state a claim" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Although Nofziger did not raise *Heck* as an affirmative defense, the district court correctly noted that § 1915(e)(2)(B)(ii) obligates it to dismiss a case "at any time if the court determines" that the action "fails to state a claim on which relief may be granted."

---

[5] Massachusetts has a similar sentencing regime, and there, the courts have considered cases in which a prisoner's postconviction credits had no effect on the duration of custody. *See, e.g.*, *Reynolds v. Superintendent, Old Colony Corr. Ctr.*, 809 N.E.2d 1051, 1053 (Mass. 2004) ("Whenever, as here, a sentence on a charge that does not qualify for good time is being served concurrently with a sentence on a separate charge that does qualify, it may turn out that good time is of no practical benefit to the prisoner."); *Rampino v. Superintendent, Old Colony Corr. Ctr.*, 814 N.E.2d 1094, 1095–96 (Mass. 2004) (same).

I agree with the majority that, because the district court dismissed Hebrard's complaint for failure to state a claim, we should "affirm the district court's dismissal of his claim only if the *Heck* bar is obvious from the face of his complaint." However, I disagree with the majority's conclusion that the *Heck* bar is obvious from the face of Hebrard's complaint.[6]

In *Washington v. Los Angeles County Sheriff's Department*, we held that "*Heck* dismissals" do not "categorically count as dismissals for failure to state a claim." 833 F.3d 1048, 1055 (9th Cir. 2016). Rather, a *Heck* dismissal "may constitute a PLRA strike for failure to state a claim when *Heck's* bar to relief is obvious from the face of the complaint." *Id.*

Here, the *Heck* bar was not obvious from the face of Hebrard's complaint. As explained above, the only pertinent fact we know from Hebrard's complaint is that the challenged disciplinary action resulted in multiple sanctions, including revocation of 27 earned-time credits. That fact alone is simply not enough to establish that restoration of those credits would necessarily lead to Hebrard's immediate or speedier release—and if they would not, then the *Heck* bar does not apply.

Moreover, it was Nofziger's burden to prove that the *Heck* affirmative defense applies—Hebrard was not required

---

[6] Hebrard argues that Nofziger waived the *Heck* affirmative defense, but the majority concludes that Nofziger merely forfeited it. I do not need to resolve that issue because, even assuming that Nofziger merely forfeited the *Heck* defense and the district court was obliged under § 1915(e)(2)(B)(ii) to consider *sua sponte* whether Hebrard's complaint failed to state a claim under *Heck*, I conclude that the district court erred in concluding that the *Heck* bar is obvious on the face of the complaint.

to plead enough facts in his complaint to show that *Heck* does not apply. The majority and I agree that *Heck* is an affirmative defense. Therefore, compliance with *Heck* is "not a pleading requirement." *Washington*, 833 F.3d at 1056. Even under the PLRA, prisoners are not required "to specially plead" around affirmative defenses in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) ("Rule 8 does not require plaintiffs to plead around affirmative defenses." (citing *Jones*, 549 U.S. at 216)).

Because it is not obvious from the face of Hebrard's complaint that his claim is *Heck*-barred, and *Heck* compliance is not a pleading requirement, the district court erred in concluding that Hebrard "failed to state a claim" based on *Heck.* Further, because Hebrard did not fail to state a claim, the district court erred in concluding that it was obliged to dismiss his claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV

We don't know whether Hebrard's claim is actually *Heck*-barred. But even assuming that Nofziger could have met his burden to prove that *Heck* applies (and simply neglected to do so), I fear that the majority's decision will have unintended consequences for future cases.

In effect, the majority's decision sets a double-standard: If a prisoner challenges a disciplinary action that revoked some postconviction credits in a § 1983 complaint, the defendant may get that complaint dismissed as *Heck*-barred (or the court may dismiss *sua sponte*)—even if the defendant fails to provide the court with any additional information. But if the prisoner challenges the same disciplinary action in

a habeas petition, the prisoner will have to prove not only that their claim would effectively restore the credits, but also that restoration of those credits would inevitably lead to their immediate or earlier release. To meet that burden, the prisoner would have to provide information about their convictions, sentences, and the operation of state law—or else their habeas petition will be dismissed for lack of jurisdiction.

The majority's decision also effectively turns the *Heck* affirmative defense into a pleading requirement for prisoners proceeding *in forma pauperis* under the PLRA, at least in cases that involve postconviction credits. Unless the prisoner makes clear on the face of the complaint that restoration of the prisoner's credits would not necessarily lead to their immediate or earlier release, then, under the precedent set by the majority's opinion, the district court will be *required* under § 1915(e)(2)(B)(ii) to *sua sponte* dismiss the complaint for failure to state a claim.

And what if Hebrard's claim is not actually *Heck*-barred because restoring his earned-time credits would not necessarily affect the duration of his custody? If so, then the dismissal of his complaint as *Heck*-barred was not only incorrect but unfair, for several reasons.

Hebrard was proceeding *in forma pauperis* under the PLRA, 28 U.S.C. § 1915. Under § 1915(g), a prisoner who proceeds *in forma pauperis* risks incurring a "strike" if their complaint is dismissed for failure to state a claim, and a prisoner who incurs three strikes is barred from proceeding *in forma pauperis* in any future claims. *Id.*; *Washington*, 833 F.3d at 1054. Because the district court dismissed Hebrard's complaint for failure to state a claim, he likely incurred a

strike. If Hebrard's complaint is not actually *Heck*-barred, then that strike is unwarranted.

Additionally, if Hebrard's complaint is not actually *Heck*-barred, he has no reasonable option for correcting the error and re-filing his § 1983 claim. In theory, he could remedy the error by filing a habeas petition that satisfies all of AEDPA's exhaustion and procedural requirements, proving that his claim is not within the core of habeas, getting his own petition dismissed, and then re-filing his § 1983 complaint. This option, however, effectively shifts the *Heck* burden of proof from the defendant to the prisoner. And forcing a prisoner (especially one proceeding *in forma pauperis*) to run this gauntlet to remedy an incorrect *Heck* dismissal is unduly burdensome.

In any event, this option is not actually available to Hebrard because, as the majority notes, he is now time-barred from filing a habeas petition. And if Hebrard correctly filed his claim under § 1983, then he is not to blame for missing that deadline. In *Nettles*, we noted that AEDPA and the PLRA impose different requirements, and we predicted that the "rule that habeas is available only for actions in the 'core of habeas'" would "give needed clarity to state prisoners" about whether they should bring their claim in habeas or under § 1983. 830 F.3d at 932 n.8 & 934. If Hebrard correctly applied the rule that habeas is available only for actions in the core of habeas, then he correctly followed the PLRA's requirements instead of AEDPA's.

\* \* \* \* \*

On this record, we do not have the information we need to be certain that Hebrard's claim is within the core of habeas and properly dismissed as *Heck*-barred. Because the record does not include that essential information, the district court

erred in (1) determining that the *Heck* bars Hebrard's claim, and (2) dismissing his complaint for failure to state a claim. Hebrard was not required to plead around the *Heck* affirmative defense. Moreover, Nofziger forfeited (and possibly waived) the *Heck* affirmative defense and failed to meet his burden to prove that *Heck* applies despite having multiple opportunities to do so. For these reasons, I would reverse the district court's dismissal of Hebrard's § 1983 claim as barred by *Heck*, and I respectfully dissent.