**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VINCENT FRIED,
    *Plaintiff-Appellant*,

v.

WYNN LAS VEGAS, LLC,
    *Defendant-Appellee.*

No. 20-15710

D.C. No.
2:18-cv-00689-APG-BNW

OPINION

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted May 5, 2021
Seattle, Washington

Filed November 18, 2021

Before: Morgan Christen and Mark J. Bennett, Circuit
Judges, and Roslyn O. Silver,* District Judge.

Opinion by Judge Christen

---

*The Honorable Roslyn O. Silver, Senior United States District Judge
for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Employment Discrimination

The panel reversed the district court's summary judgment against Vincent Fried on his claim for hostile work environment in violation of Title VII, and remanded.

The panel concluded that a reasonable factfinder could decide that Fried's employer Wynn Las Vegas created a hostile work environment at the salon where he worked as a manicurist. To establish that he was subjected to a hostile work environment, Fried was required to prove that: (1) he was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. The panel held that it is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination that the employer knew or should have known about. To determine whether an environment is sufficiently hostile or abusive to violate Title VII, a court must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel agreed with the district court that comments made by a manager and coworkers on two occasions were insufficiently severe or pervasive to support a hostile work environment claim. The panel held, however, that an employer's response to a third party's unwelcome sexual advances toward an employee can independently create a hostile work environment. Here, the manager's response to Fried's report that a customer had sexually propositioned him should have prevented entry of summary judgment in Wynn's favor because the manager not only failed to take immediate corrective action, but also directed Fried to return to the customer and complete his pedicure. The panel also reversed the district court's ruling that coworkers' breakroom comments on the customer's sexual proposition were insufficiently severe or pervasive to support Fried's claim. The panel instructed the district court on remand to reconsider the cumulative effect of the coworkers' comments.

**COUNSEL**

Michael P. Balaban (argued), Law Offices of Michael P. Balaban, Las Vegas, Nevada, for Plaintiff-Appellant.

Jen J. Sarafina (argued) and Dare E. Heisterman, Kamer Zucker Abbott, Las Vegas, Nevada, for Defendant-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Vincent Fried appeals the district court's order granting summary judgment to Wynn Las Vegas (Wynn) on Fried's claim for hostile work environment in violation of Title VII of the Civil Rights Act of 1964.[1]  Because a reasonable factfinder could decide that Fried's employer created a hostile work environment, we reverse the district court's judgment and remand.

I

Fried worked as a manicurist at a salon in the Wynn Hotel in Las Vegas, Nevada, from April 2005 to July 2017.  His performance reviews show that he met or exceeded expectations, and Fried received eight certificates of merit based on positive comments from guests, extraordinary performance, or otherwise "going above and beyond."

Fried alleges that he complained to management about female manicurists receiving most of the appointments, and that other male manicurists complained about this as well.[2]  Though appointments were generally allocated to manicurists based on a system Fried designed to balance the assignments,

---

[1] Fried also appeals the district court's order granting summary judgment to Wynn on his claims for sex discrimination and retaliation pursuant to Title VII.  We affirm the dismissal of those claims in a concurrently filed memorandum disposition.

[2] At the summary judgment stage, we view the facts in the light most favorable to Fried.  *See Ellison v. Brady*, 924 F.2d 872, 873 (9th Cir. 1991).

Fried testified that his female coworkers received more appointments, due in part to customers specifically requesting female manicurists.

On one occasion in March 2017, Fried became frustrated and threw a pencil at a computer because customers were requesting female manicurists more often than male manicurists. Fried alleges that a manager at the salon, Sarah Barajas, disciplined him for throwing the pencil and commented that he might want to do something else for work. According to Fried, Barajas remarked that Fried was working in a "female job related environment" and suggested that he look for other employment in the culinary field. On another occasion a female coworker told Fried and another male manicurist that if they wanted to get more clients, they should wear wigs to look like women. Fried alleges that his coworkers made similar comments to him on other occasions, and his male coworkers agreed that they were subjected to similar remarks.

In June 2017, a male customer came into the salon for a pedicure and Fried was assigned to provide the service. The customer asked Fried to give him a massage in the customer's hotel room and said he had massage oil. When Fried responded, "we don't do that kind of service," the customer made an explicit sexual proposition, asking if Fried wanted to have sex and "rub[] [the customer's] penis." The customer told Fried "it [is] wonderful to have sex with another man."

Fried immediately went to the salon's front desk, reported the customer's conduct to Barajas, and stated that he no longer felt comfortable interacting with the customer. According to Fried, Barajas directed him to "just go [finish the pedicure] and get it over with." Fried complied, but

testified that he felt "absolutely horrible" and "uncomfortable" during the twenty or so minutes it took to finish the customer's pedicure. In total, the customer made five or six inappropriate sexual references to Fried during the thirty-five- to forty-five-minute pedicure, and grabbed or held Fried's hand or arm for about a minute when Fried escorted the customer out of the salon after completing the pedicure. The customer did not otherwise touch Fried.

Fried confronted Barajas after the customer left and told her that they needed to discuss what had happened. Barajas responded that she was busy dealing with emails but would talk to him "when she got a chance." When Fried followed up later that day, Barajas again told him that she had a lot of emails to review and asked to discuss the incident another time. Fried told Barajas that he would report the incident to the hotel's human resources department, but he did not do so, and there is no evidence that Fried and Barajas ever discussed the incident again.

About one week later, Fried was in the salon's breakroom and asked his coworkers whether Barajas was on duty because he still wanted to speak with her about the customer who had propositioned him. A female coworker told Fried he should not be upset about the incident and should instead take it as a compliment. When Fried responded that he was not happy with that remark, another female coworker allegedly said, "shut up Vincent, you know you want sex from [the customer], you keep mentioning it."

On April 16, 2018, Fried filed suit against Wynn in the United States District Court for the District of Nevada. His complaint included claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, for sex discrimination, retaliation, and hostile

work environment. Wynn moved for summary judgment, and the court dismissed Fried's claims and entered final judgment in Wynn's favor. Fried timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the dismissal of Fried's sex-discrimination and retaliation claims in a concurrently filed memorandum disposition, but we reverse the dismissal of Fried's hostile work environment claim.

## II

We review de novo the district court's order granting summary judgment. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We view the evidence in the light most favorable to Fried and determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Whether Fried was subjected to a hostile work environment and Wynn is liable for creating a hostile work environment are mixed questions of law and fact that we review de novo. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002).

## III

Fried argues four incidents at the salon created a hostile work environment in violation of Title VII: (1) Barajas's suggestion that he seek employment in a field that is not a predominantly female environment; (2) his coworkers' suggestions that he should wear a wig; (3) Barajas's response to his report that a customer had sexually propositioned him; and (4) Fried's coworkers' comments that he should take the

customer's proposition as a compliment and that Fried actually wanted to have sex with the customer.

Title VII of the Civil Rights Act of 1964 prohibits sex discrimination, including sexual harassment, in employment. 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). To succeed on his Title VII claim for hostile work environment, Fried was required to establish that: (1) he was subjected to a hostile work environment; and (2) Wynn was liable for the harassment that caused the hostile environment to exist. *See Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). Because the district court granted summary judgment to Wynn based solely on the first prong of the claim, we limit our review to whether Fried was subjected to a hostile work environment. To establish he was subjected to a hostile work environment, Fried was required to prove that: (1) he was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *See Little*, 301 F.3d at 966.

The Supreme Court has held an employer is liable pursuant to Title VII only for "its own" acts, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), but it is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about. All federal circuits are in accord on this point. *See, e.g.*, *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021); *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 57 (1st Cir. 2019); *Vasquez v. Empress*

*Ambulance Serv., Inc.*, 835 F.3d 267, 273–74 (2d Cir. 2016); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011); *Beckford v. Dep't of Corr.*, 605 F.3d 951, 957–58 (11th Cir. 2010); *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009); *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008); *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999) (per curiam)*; Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997); *see also* 29 C.F.R. § 1604.11(e) (providing that employers may be liable for sexual harassment perpetrated by nonemployees "in the workplace, where the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action").

To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, we consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008)). "Not every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). The standard for judging hostility is meant to "ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

The Supreme Court has explained that, properly applied, this standard "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (internal quotation marks omitted) (quoting B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 175 (1992)). A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.

A single incident of harassment "can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis," *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (internal quotation marks omitted), but for a single incident to suffice, it "must be extremely severe," *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000); *see also Little*, 301 F.3d at 967 (collecting cases). When severity is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis*, 520 F.3d at 1096.

A

Fried first argues that Barajas created a hostile work environment by commenting that he should consider finding a job in which the clientele is not mostly female.[3] Fried

---

[3] We serially discuss whether the incidents Fried alleges created a hostile work environment because: (1) Fried presents the four incidents in this manner in his briefing; and (2) the incidents are different in kind or severity. However, the cumulative effect of the four incidents determines whether a hostile work environment existed. *See Christian*, 984 F.3d

alleges that Barajas told him on one occasion he was "in a female job related environment," suggested he "look for other employment in cooking in the future," and said he "might want to do something with cooking for work."  Fried also argues his coworkers created a hostile work environment by remarking that he and another male manicurist should wear wigs if they wanted to get more clients or make more money at the salon.  Fried identified only two specific occasions, about a month apart, on which his coworkers made these comments.  The district court ruled these statements were insufficiently severe or pervasive to support a hostile work environment claim.  We agree with the district court.

The required severity for "harassing conduct varies inversely with the pervasiveness or frequency of the conduct."  *Id*. (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).  Because Fried testified that Barajas made her comments on one occasion and his coworkers suggested on two occasions that he should wear a wig to look like a woman, the comments would have to be proportionately more severe to make up for their relative infrequency. *See id.* The comments here fall far short of that mark.  Indeed, we have deemed much harsher comments and actions insufficient to create a hostile work environment.

In *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), a female employee brought a hostile work environment claim based on her supervisor's misogynistic comments.  *Id.* at 1106–08.  The supervisor referred to an employee as a "regina" and said that the employee "laughs like a hyena."  *Id.* at 1107.  The same supervisor referred to another employee as a "madonna," a "regina," and a

at 809–10.

"castrating bitch," and to women generally as "bitches" and "histrionics." *Id.* We held that these crass and denigrating comments were not severe enough to create a hostile work environment, in part because the comments were concentrated on one occasion. *See id.* at 1110–11.

Almost three years later, in *Manatt v. Bank of America, NA*, 339 F.3d 792 (9th Cir. 2003), we considered a female Chinese-American employee's hostile work environment claim based on coworkers' patently offensive racial comments and acts. *Id.* at 794–95. On one occasion, Manatt overheard her coworkers laughing and saying "China Man" and saw them pulling "their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." *Id.* at 795. On a different day, one of Manatt's coworkers ridiculed her for mispronouncing the word "Lima" and referred to her as "China woman." *Id.* Though unquestionably offensive and insensitive, we held that these gestures and comments did not create an actionable hostile work environment. *Id.* at 798–99; *see also, e.g.*, *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643–44 (9th Cir. 2003) (holding a coworker's isolated remarks, six months apart, that an employee had "a typical Hispanic macho attitude" and "should consider transferring to the field because 'Hispanics do good in the field'" were not severe enough to create a hostile work environment).

The objective severity of Barajas's comments about looking for a job outside of a female-oriented field pale in comparison to the statements and conduct in *Kortan*, *Manatt*, and *Vasquez*. Those cases involved either sexually or racially motivated derogatory language; Barajas's comments did not directly pertain to Fried's sex or race. The context in which the comments were made is also important because Fried has

a degree in culinary arts, and Fried's coworkers testified that it was well known his dream job was to own a food truck. Especially when viewed against that backdrop, Barajas's comments suggesting that Fried "might want to [consider doing] something with cooking for work," clearly do not support a claim of hostile work environment. Fried's coworkers' banter regarding wearing wigs is also insufficient. Even viewed cumulatively, this is the type of infrequent joking or teasing we have held to be part of the ordinary tribulations of the workplace. *See EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) (acknowledging sporadic gender-related jokes or occasional teasing do not support a hostile work environment claim).

## B

The third episode is much more compelling. Fried alleges that Barajas responded to his report that a male customer had sexually propositioned him by directing him to return to the customer and complete the pedicure service. Fried is clear that he does not seek to hold Wynn vicariously liable for the male customer's conduct. Rather, Fried alleges that his manager's response, after learning about the male customer's conduct, independently created a hostile work environment. The district court ruled that this episode was insufficient to support a hostile work environment claim because "Fried was not touched physically, other than a brief touch on the arm," he was not alone with the customer, and he was able to complete the customer's pedicure.

Several circuit courts, including our own, have recognized that an employer's *response* to a third party's unwelcome sexual advances toward an employee can independently create a hostile work environment. Thus, the district court

erred when it focused on the customer's conduct; Fried's claim is premised on Wynn's response to the customer's harassment.

We explained in *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000), that an employer's prompt corrective response can insulate an employer from liability for an employee's hostile work environment claim. Brooks reported to her employer that a coworker "forced his hand underneath her sweater" and fondled her breast. *Id.* at 921. The employer put the coworker on administrative leave the next day, began an investigation, and later initiated termination proceedings that led to the coworker's resignation. *Id.* at 921–22. We made clear that while the coworker's egregious conduct was relevant, the proper focus for the hostile work environment claim was the employer's response to the coworker's conduct. *Id.* at 924. Because the employer took corrective action right away, we held the employer in *Brooks* was not liable for subjecting the employee to a hostile work environment. *See id.* at 925–26.

In contrast to the employer in *Brooks*, the employer in *Little v. Windermere Relocation, Inc.*, 301 F.3d 958 (9th Cir. 2002), not only failed to intervene after learning of harassing conduct, but also responded in ways that exacerbated the hostile work environment. In the process of conducting contract relocation work for Starbucks, Little learned that Starbucks was dissatisfied with its primary relocation provider, and she mentioned this to Windermere's president. *See id.* at 964. The president allegedly said he would "do whatever it t[ook] to get th[e] account," and encouraged Little to "do the best job she could." *Id.* Little later accepted a dinner invitation from a Starbucks representative to discuss the account, but she began to feel ill after the meal and passed

out. *Id.* When she awoke, she found herself being sexually assaulted by the Starbucks representative. *Id.*

A management-level employee advised Little "not to tell anyone in management" about the assault. *Id.* And the person designated in Windermere's harassment policy as a "complaint-receiving manager" told Little to "try to put [the assault] behind her" and to stop working on the Starbucks account. *Id.* at 965. But Windermere's president continued to ask Little if she was making progress on the account. *Id.* Little eventually told the president about the assault, and his "immediate response was that he did not want to hear anything about it." *Id.* He told Little she would have to speak to his lawyer, immediately cut her base pay from $3,000 per month to $2,000 per month, and within a few days terminated Little's employment. *Id.* Little filed suit, alleging that Windermere's reaction to her report created a hostile work environment, but the district court entered summary judgment in favor of Windermere. *Id.* at 965–66.

On appeal, we held that a reasonable jury could agree with Little because Windermere failed to take immediate and effective remedial action, because Little was not relieved of responsibility for the Starbucks account, and because Little was warned she might suffer an adverse employment action if she reported the abuse. *Id.* at 967. We concluded that Windermere's "actions reinforced rather than remediated" the sexual assault and allowed the sexual assault's effects to permeate Little's work environment and alter it irrevocably. *Id.*

The Tenth Circuit has recognized that an employer's response to a customer's offensive conduct can create a hostile work environment where the response subjects an

employee to further abuse. In *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998), Lockard, a waitress, informed her manager that she did not like waiting on two particular customers. *Id.* at 1067. When the customers returned to the restaurant, the manager told Lockard to wait on them anyway, and one of the customers took the opportunity to tell Lockard that she smelled good and grabbed her hair. *Id.* Lockard immediately reported that conduct to her manager and again said she did not want to wait on the pair. *Id.* The manager directed: "You wait on them. You were hired to be a waitress. You waitress." *Id.* Lockard returned to the customers and one of them pulled her hair, grabbed her breast, and put his mouth on her breast. *Id.* A jury found that Lockard established a hostile work environment, *id.* at 1068, and the Tenth Circuit affirmed the district court's denial of the employer's motion for judgment as a matter of law, *id.* at 1077. The Tenth Circuit reasoned that the employer was liable for creating a hostile work environment because the restaurant had notice of the customers' harassing conduct, yet ordered Lockard to continue waiting on them. *See id.* at 1075 (emphasizing that the manager "placed Ms. Lockard in an abusive and potentially dangerous situation, although he clearly had both the means and the authority to avoid doing so"). Rather than taking immediate and effective corrective action like the employer in *Brooks*, Lockard's manager clearly conveyed that Lockard was expected to tolerate the customers' abuse. *See id.*

Other circuits have held employers liable on hostile work environment claims, or have denied summary judgment to employers on such claims, where the employer's response to known harassment has subjected the employee to further harassment. *See, e.g.*, *Rodriguez-Hernandez v. Miranda-*

*Velez*, 132 F.3d 848, 854–55 (1st Cir. 1998) (holding a reasonable jury could find a hostile work environment was created when a supervisor refused to intervene after a firm client made sexual advances toward an employee, and instead "conditioned her future with the company on her responding to the unwanted sexual demands of a customer"); *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111–12 (8th Cir. 1997) (finding dispute of fact as to a hostile work environment premised on sexual harassment where a care facility asked a care provider, who had reported being sexually assaulted by a resident, to subject herself to additional offensive touching so management could observe the conduct); *cf. Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) (explaining that "an employer may be held liable for sexual harassment on the part of a private individual . . . where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct").

Consistent with this case law, Barajas's response to Fried's report that a customer had sexually propositioned him should have prevented entry of summary judgment in Wynn's favor. Barajas not only failed to take immediate corrective action, she directed Fried to return to the customer and complete his pedicure. Her response to Fried's report ("just go do it and get it over with"), was akin to the manager's response in *Lockard*, 162 F.3d at 1067 ("You were hired to be a waitress. You waitress."). Barajas's direction discounted and effectively condoned the customer's sexual harassment and, as was the case in *Lockard*, went a step further by conveying that Fried was expected to tolerate the customer's harassment as part of his job.

Wynn argues that the facts of this case do not rise to the level of creating a hostile work environment, but because the focus is on Barajas's reaction, we have no trouble concluding that reasonable jurists could disagree with Wynn on this point. Fried's admissible evidence clearly satisfied the subjective component of the hostile work environment claim because Fried described feeling "absolutely horrible" and "uncomfortable" while performing the pedicure. As for the objective component, Fried testified that it took approximately twenty minutes to complete the pedicure after the customer explicitly sexually propositioned him and it is clear he was subjected to extended personal contact with the customer during the time it took to complete the service. It also appears the customer continued to harass Fried after he returned to complete the pedicure.[4] Reasonable jurors could decide that Fried's manager condoned the customer's conduct and conveyed that sexual harassment would be tolerated in the salon because she took no action to stop it—such as requiring the customer to leave the premises immediately. To the contrary, Barajas directed Fried to re-subject himself to the harasser for an extended period of time. *See Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (holding we consider "all the circumstances," including whether the discriminatory conduct was "physically threatening or humiliating" (quoting *Davis*, 520 F.3d at 1095)). Under our precedent, the district court erred by ruling on summary judgment that Barajas's response to Fried's report of the customer's harassment was insufficient as a matter of law to create a hostile work environment.

---

[4] Fried testified that he reported the customer's proposition "immediately"; that Barajas directed him to complete the service; and that, in all, the customer made approximately five or six sexually inappropriate statements during the pedicure.

C

Finally, Fried argues that his coworkers' insensitive breakroom commentary that he should take the customer's sexual proposition as a compliment and that Fried had welcomed the customer's sexual advance, contributed to the salon's hostile work environment. The district court ruled these comments were insufficiently severe or pervasive to support Fried's claim. But in light of our ruling that Barajas's response to Fried's report of the customer's sexual proposition could be sufficient on its own to create a hostile work environment, we reverse the district court's ruling on these related breakroom remarks. *See Christian*, 984 F.3d at 809–10 (explaining the cumulative effect of conduct must be considered).

IV

Fried failed to establish that his manager's suggestion that he work in another industry and his coworker's suggestion that he should wear a wig created a hostile work environment. But a reasonable factfinder could conclude that the manager's response to Fried's report of a customer's overt sexual proposition subjected Fried to a hostile work environment. We therefore reverse the district court's order granting summary judgment in favor of Wynn on Fried's hostile work environment claim. On remand, the district court shall reconsider the cumulative effect of the related comments by Fried's coworkers that he should take the customer's sexual proposition as a compliment or that he welcomed it.

**REVERSED and REMANDED.**