NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 23 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARIA C. LUNA,

Plaintiff-Appellant,

v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION;
CALIFORNIA MEDICAL FACILITY,

Defendants-Appellees.

No.   22-15769

D.C. No. 3:20-cv-08097-EMC

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted January 17, 2024
San Francisco, California

Before:  COLLINS, FORREST, and SUNG, Circuit Judges.

Maria Luna appeals the district court's grant of summary judgment in favor

of the California Department of Corrections and Rehabilitation ("CDCR") on her

Title VII hostile work environment claim. We have jurisdiction under 28 U.S.C.

§ 1291, and we review de novo. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

(9th Cir. 2021). For the reasons below, we affirm.

Even assuming that the inmate's conduct created a hostile work environment, CDCR is not liable for the inmate's conduct. An employer is liable for harassment by a third party "where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Freitag v. Ayers*, 468 F.3d 528, 538 (9th Cir. 2006) (quoting *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir.1997)). Conversely, "an employer's prompt corrective response can insulate an employer from liability for an employee's hostile work environment claim." *Fried*, 18 F.4th at 650.

Here, after Luna experienced a single incident of indecent exposure by an inmate, CDCR took immediate, corrective actions. Specifically, CDCR referred the case for criminal prosecution; implemented multiple security measures pending investigation; investigated the incident; and held a disciplinary hearing, all within about a month of the incident. *See Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."). After the inmate was found guilty of indecent exposure, CDCR imposed sanctions that included revocation of the inmate's privileges, loss of good time credit, and a requirement that the inmate

wear an exposure control jumpsuit. *See Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) ("Employers should impose sufficient penalties to assure a workplace free from sexual harassment."). CDCR's measures were at least effective in preventing the inmate from exposing himself to Luna again. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1018 (9th Cir. 2018) ("[T]he issue of whether the employer's actions successfully ended the harassment [is] relevant to the question of whether those actions were reasonable.").

Luna argues that CDCR's response was unreasonable because it failed to eliminate all contact between Luna and the inmate. However, "Title VII does not require . . . that prisons prevent all manner of harassment at all cost and without regard to important penological interests." *Beckford v. Dep't of Corr.*, 605 F.3d 951, 959 (11th Cir. 2010). CDCR took steps "reasonably tailored to the incident at hand," *Campbell*, 892 F.3d at 1019, and its failure to implement the specific measures that Luna identifies does not establish liability. First, Luna contends that CDCR should have completely banned the inmate from the building in which Luna worked. However, in addition to taking the security and disciplinary measures discussed above, CDCR barred the inmate from taking any group classes that Luna taught at the facility. In this context, CDCR reasonably declined to completely bar the prisoner from Luna's building because that was the only place where the inmate could access mental health treatment, and ensuring an inmate's access to

treatment is an important penological interest.

Second, Luna argues that CDCR was unreasonable because it did not transfer the inmate to a different facility. However, CDCR responded to the indecent exposure incident promptly and imposed multiple disciplinary actions and restrictions on the inmate. Having responded with significant and strict measures that took into account the unique context of a prison, CDCR was not required to go even further and to impose the "most draconian" measures imaginable. *Campbell*, 892 F.3d at 1019 ("While [more severe and exacting] action may be appropriate in some situations, this is not what the law requires in all circumstances."); s*ee also Beckford*, 605 F.3d at 959 (explaining prisons cannot "eject unruly inmates like businesses can eject rude customers").[1]

Third, Luna contends that CDCR was unreasonable because it did not offer

---

[1] Insofar as Luna raises factual disputes about CDCR's decision not to transfer the inmate, she (1) mischaracterizes CDCR's reliance on the Special Master report and fails to demonstrate why CDCR could not take into account the "important penological interests" and "constitutional limits" identified in the report in making its decision, *Beckford*, 605 F.3d at 959; (2) does not offer evidentiary support for disputing whether the inmate had mental health conditions that may have contributed to his harassing conduct, *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (explaining that a party cannot "expect the [] court to draw inferences favorable to it when they are wholly unsupported"); and (3) offers new evidence of CDCR policy requiring the inmate be transferred that cannot be considered, *see Krishner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal.").

Luna a transfer to a position in a different facility. Where a harassment victim has requested a job transfer in response to a hostile work environment, an employer may be required to grant such a request, but an employer may not force a victim to transfer. *See Christian v. Umpqua Bank*, 984 F.3d 801, 814 (9th Cir. 2020) ("[F]orced transfer is no remedy."). Here, although Luna testified that she was open to a transfer, she does not identify any evidence showing that she requested a transfer. And she does not identify any evidence showing that CDCR should have known that she was open to a transfer to avoid contact with the inmate. Because transfer of a victim is a permissible remedy only if it is voluntary, CDCR's failure to transfer Luna under these circumstances was reasonable. *See Campbell*, 892 F.3d at 1018 ("We can evaluate the reasonableness of an employer's corrective measures only from the perspective of what the employer knew or should have known at the time it acted.").

Finally, to the extent Luna asserts that CDCR acted unreasonably by failing to follow its own policies in responding to the incident of harassment, Luna makes these arguments for the first time on appeal, and they are forfeited. *See Cornhusker Cas. Ins. Co. v. Kachman*, 553 F.3d 1187, 1191 (9th Cir. 2009) ("[A]n appellate court will not hear an issue raised for the first time on appeal.") (quoting *Broad v.*

*Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir.1996)).[2]

     **AFFIRMED.**

---

[2] Luna has also forfeited any arguments related to the state law tort claims she brought against CDCR because she does not contest the district court's decision granting summary judgment to CDCR on these claims. *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019).