**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAWN LUI, an individual,

*Plaintiff-Appellant*,

v.

LOUIS DEJOY, Postmaster General of the United States Postal Service,

*Defendant-Appellee*.

No. 23-35378

D.C. No.
3:21-cv-05030-
BHS-TLF

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted September 11, 2024
Seattle, Washington

Filed February 26, 2025

Before: William A. Fletcher and Jennifer Sung, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge W. Fletcher

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY**

## Title VII

The panel reversed the district court's summary judgment on Dawn Lui's disparate treatment claim, remanded to allow the district court to address the merits of Lui's hostile work environment claim, and affirmed the district court's grant of summary judgment on Lui's retaliation claim in Lui's action under Title VII of the Civil Rights Act against her employer, the United States Postal Service ("USPS").

Concerning Lui's disparate treatment claim, the panel held that the district court erred in finding that Lui failed to establish a prima facie case of discrimination—the first part of the three-part test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The panel held that Lui, who is a woman of Chinese ethnicity, satisfied the fourth element of the test for establishing a prima facie case by showing that she was treated less favorably than similarly situated individuals. She was removed from her position as Postmaster in Shelton, Washington and demoted to a Postmaster position at Roy, Washington at a lower salary, and she was replaced by a white man. Those circumstances gave rise to an inference of discrimination, and this was all she needed to show to satisfy the fourth element. The panel also held that the district court erred in finding that USPS met its burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The panel held

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that there was a genuine dispute of material fact about whether the decision of Tacoma Postmaster Karen Bacon to confirm Lui's demotion was actually independent or influenced by subordinate bias.

The panel disagreed with the district court's conclusion that Lui failed to exhaust her administrative remedies on her hostile work environment claim. Contrary to USPS's argument, Lui's failure to address administrative exhaustion in her opening brief was at most forfeiture, not waiver. The court can review a forfeited issue if the failure to raise the issue properly did not prejudice the defense of the opposing party. A review of the record showed that USPS had notice of Lui's positions and arguments. The panel exercised its discretion to address exhaustion, concluded that Lui exhausted her administrative remedies for her hostile work environment claim, and remanded for the district court to address the merits of her claim.

Concerning Lui's retaliation claim, Lui argued that USPS engaged in unlawful retaliation by demoting her based on "unacceptable conduct"—that Lui had improperly brought an employee's husband into a staff-only area of the Post Office while investigating his complaint that a Post Office employee had sexually harassed his wife. The panel held that the district court properly found that Lui failed to establish a causal connection between this conduct and USPS's decision to downgrade her position, and therefore affirmed the district court's grant of summary judgment to USPS on Lui's retaliation claim.

## COUNSEL

Nolan Lim (argued), Nolan Lim Law Firm PS, Seattle, Washington, for Plaintiff-Appellant.

Katie D. Fairchild (argued), Assistant United States Attorney; Tessa M. Gorman, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Seattle, Washington, for Defendant-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff-Appellant Dawn Lui, a longtime employee of the United States Postal Service ("USPS"), brought suit under Title VII of the Civil Rights Act alleging disparate treatment, a hostile work environment, and unlawful retaliation. The district court granted summary judgment to USPS on all of Lui's claims. We affirm in part, reverse in part, and remand.

### I.  Background

Lui is a woman of Chinese ethnicity in her late fifties. She has worked for USPS since 1992 and has been a Postmaster since 2004. In 2014, she was appointed as Postmaster of the Post Office in Shelton, Washington.

According to the sworn declarations of Lui and her supervisor Charles Roberts, employees in the Shelton Post Office began targeting Lui with a series of false complaints and grievances after her appointment as Shelton Postmaster.

Roberts and Lui believe that she was targeted because of her race, sex, and national origin. They state in their declarations that white male managers at the Shelton Post Office were not similarly targeted. For example, Lui stated that workers at the Post Office referred to her as "Asian bitch" and "witch." In a sworn declaration, a Shelton Post Office employee stated that he heard "more than once . . . the complaint/rumor that Dawn can't read or speak English and doesn't understand it." Lui stated in her declaration that during the investigation of one of the submitted grievances, she was "subjected to a humiliating interview" in which she was asked if she "had some personal or intimate relationship with . . . Roberts," which Lui attributed to the investigator's knowledge that Roberts was married to an Asian woman.

Roberts stated in his declaration that he raised concerns about Lui's treatment with Human Resources Manager Alexis Delgado, who was responsible for investigating the complaints filed against Lui. Roberts told Delgado that he believed Union Representative Renee Pitts, along with other employees, were targeting Lui based on her race and gender. Roberts stated that rather than investigating his concerns about Pitts, Delgado "worked unusually close[ly] with . . . Pitts to pursue discipline against . . . Lui," even inviting Pitts to a disciplinary meeting regarding Lui that did not involve union matters. Roberts stated that on numerous occasions, Delgado and Labor Relations Manager Lacey O'Connell asked Roberts "whether . . . Lui and [he] were married, related by marriage, or engaged in a sexual relationship."

Roberts attempted to report Delgado's conduct to his direct supervisor, Darrell Stoke. He requested a meeting with Stoke to discuss his concerns. However, Stoke invited Delgado to the meeting, making it impossible for Roberts to raise his concerns about Delgado. At that meeting, Stoke

and Delgado told Roberts that they "wanted . . . Lui removed from the USPS" and wanted Roberts to "support their decision." Roberts stated that "[i]t was made extremely clear that if I did not provide a viable alternative towards the proposed discipline, I would be moved to another position" so that a replacement could sign off on the proposed discipline. Roberts instead recommended a downgrade for Lui, which he believed "saved Ms. Lui's position."

Delgado and Stoke prepared a notice of proposed downgrade for Lui and presented it to Roberts for signature. The notice proposed to downgrade Lui from Postmaster of the Shelton Post Office to Postmaster of the Post Office in Roy, Washington. The Roy Post Office is smaller than the Shelton Post Office, and the Roy Postmaster receives a lower salary. The notice contained three charges of "Unacceptable Conduct," alleging that Lui: (1) threatened a carrier in order to get him to accept a schedule change that did not comply with the carriers' union contract; (2) threw a clipboard on the ground and kicked packages and boxes that were on the workroom floor; and (3) brought an employee's husband into a staff-only area of the Post Office while investigating the husband's complaint that a postal employee had sexually harassed his wife. Roberts stated in his declaration that he refused to sign the notice because he believed the allegations against Lui were false and based on racial animus. As a result, Roberts was temporarily replaced as Manager of Post Office Operations for the Shelton Post Office. Carter Clark, the next Manager of Post Office Operations for the Seattle District, signed the notice on October 28, 2019.

The following month, Lui filed an informal discrimination complaint through USPS's Equal Employment Opportunity ("EEO") System. As relevant here, she alleged a hostile work environment; discrimination

based on race, color, sex, national origin, and age; and unlawful retaliation.

While pursuing her EEO complaint, Lui appealed the notice of proposed downgrade to Karen Bacon, the Tacoma Postmaster. Roberts stated in his declaration that prior to Lui's appeal, he had expressed to Bacon during several conversations his concerns about the racial bias of Delgado and the other employees who had accused Lui of misconduct.

On February 11, 2020, Bacon signed a "Letter of Decision" in which she concluded that the first two charges in the proposed notice of downgrade were "supported by the record." Bacon wrote that the third charge did not allege conduct rising to the level of "Unacceptable Conduct" and that she did not consider this charge in determining Lui's discipline. Based on the first two charges, Bacon confirmed the proposed downgrade, and Lui was demoted to the Roy Postmaster position.

After Lui's demotion, she was replaced as head of the Shelton Post Office by Robert Davies, a white man with less experience. Davies' title was "Officer in Charge" rather than Postmaster. A new Postmaster was assigned to the Shelton Post Office about two years after Lui was demoted and transferred.

Lui filed a formal EEO complaint in March 2020, reiterating the allegations of her informal complaint. She also appealed Bacon's decision to the Merit Systems Protection Board. After the Board affirmed her demotion, she filed suit against USPS in federal district court.

USPS moved for summary judgment on all of Lui's claims. A magistrate judge recommended granting the

motion as to Lui's retaliation claim but denying it as to her disparate treatment and hostile work environment claims. The district court adopted the recommendation only in part. It granted summary judgment against Lui on all of her claims. Lui timely appealed.

## II. Discussion

We review de novo a grant of summary judgment. *See Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 646–47 (9th Cir. 2021). We reverse the grant of the summary judgment on Lui's disparate treatment claim. We vacate the grant of summary judgment on her hostile environment claim and remand to district court. We affirm the grant of summary judgment on her retaliation claim.

## A. Disparate Treatment

The district court gave two reasons for granting summary judgment to USPS on Lui's disparate treatment claim. First, the court found that Lui failed to establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because she did not show that she was treated less favorably than "similarly situated" employees. *See Lui v. DeJoy*, No. 21-cv-05030-BHS, 2023 WL 3269760, at *6 (W.D. Wash. May 5, 2023). Second, the court found that Bacon's confirmation of Lui's downgrade was an independent adverse action not attributable to the alleged bias of other USPS employees. *See id*. We disagree with both conclusions and hold that the district court erred in granting summary judgment to USPS on Lui's disparate treatment claim.

## 1. Prima Facie Case

*McDonnell Douglas* articulated a three-part test to determine whether there has been discrimination in violation of Title VII:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). The Supreme Court wrote further: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13. A plaintiff's "requisite degree of proof . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

The first part of the *McDonnell Douglas* test—the prima facie case of discrimination—has, in turn, four elements. The parties dispute only the fourth element.

In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), the Supreme Court articulated the *McDonnell Douglas* prima facie test in a discharge case as follows: A Black employee can establish a prima facie case "by proving (1) that he is black, (2) that he was qualified for the position [he originally occupied], (3) that he was demoted from that position and ultimately discharged, and (4) *that the position remained open and was ultimately filled by a white man*." *Id.* at 506 (emphasis added). Citing *St. Mary's Honor Center*, we wrote that a Title VII plaintiff alleging sex discrimination can establish a prima facie case by showing that "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, *or her position was filled by a man*." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (emphasis added). In both *St. Mary's Honor Center* and *Villiarimo*, the fourth part of the prima facie test required only that the position previously occupied by the plaintiff be filled by a person outside the protected class. If a plaintiff satisfies that requirement, there is no additional or separate requirement under the fourth element that the person who filled the position have been "similarly situated."

Some of our cases have truncated the fourth part of the test for establishing a prima facie case as articulated in *Villiarimo*, requiring a showing that "similarly situated individuals outside [the] protected class were treated more favorably." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)). These cases leave out the alternative showing that requires only that the position have been filled by a person outside the protected

class.  *See id.*; *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (same); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (same).

The district court quoted and relied on the truncated test articulated in *Freyd*, requiring that Lui show that the person who replaced her as head of the Shelton Post Office was "similarly situated."  The court then relied on *Cornwell* to hold that because Lui was demoted rather than terminated, she could satisfy the fourth element only by showing that she was treated less favorably than a "similarly situated" employee outside of her protected class.  *See Lui*, 2023 WL 3269760, at *6.  In the view of the district court, when an employee is demoted rather than terminated, the employee cannot satisfy the fourth element under *McDonnell Douglas* by merely showing that her position was filled by another employee outside her protected class.

We are sympathetic with the district court with respect to its understanding of the fourth element of the prima facie case.  Our case law on the fourth element is confusing.  As noted above, we have repeatedly recited a truncated version of the test.  This truncated version is misleading because while it provides one basis for satisfying the fourth element, it leaves out the basis articulated in the Supreme Court's opinion in *St. Mary's Honor Center* and reiterated in our opinion in *Villiarimo*.  As is apparent from these cases, Lui can satisfy the fourth element of the prima facie case merely by showing that she was replaced by someone outside her protected class.  Separately, we are unaware of any case, in either the Supreme Court or this court, supporting the district court's distinction between a plaintiff who has been fired and a plaintiff who has been demoted.  *Cf. Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir.

1991) ("Title VII . . . do[es] not suggest that different standards exist for proving discrimination in hiring versus proving discrimination on the job.").

As explained above, in *McDonnell Douglas*, the Supreme Court established that a plaintiff could satisfy the fourth element of the prima facie case by showing that "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802. Since *McDonnell Douglas*, prima facie cases have been established in a variety of ways. In *Hagans v. Andrus*, 651 F.2d 622 (9th Cir. 1981), we noted that *McDonnell Douglas*'s requirement that "the position remained open" could not apply, in literal terms, to a case involving a denied promotion where the plaintiff's rejection "occurred simultaneously with [another individual's] hiring." *Id.* at 625. In subsequent failure-to-promote cases, we have held that a showing that an individual outside of the plaintiff's protected class filled the position is sufficient to meet the fourth element of the test. *See, e.g.*, *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1146–47, 1148 (9th Cir. 1997); *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). For example, in *McGinest*, a Black plaintiff who was denied a promotion successfully established a prima facie case of discrimination by showing that his employer "transferred a white manager into the position." 360 F.3d at 1106, 1122; *see id.* at 1122 n.7.

In other cases, the plaintiff could not show that an employer sought or subsequently hired a replacement employee. For example, in *Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994), a plaintiff alleging age discrimination was fired because "his position was eliminated" during a department restructuring. *Id.* at 887,

891. We concluded that the plaintiff had nevertheless established the fourth prong of the prima facie test "by showing the employer had a 'continuing need for his skills and services in that his various duties were still being performed.'" *Id.* at 891 (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). In *Raad v. Fairbanks North Star Borough School District*, 323 F.3d 1185 (9th Cir. 2003), where the plaintiff suffered discriminatory discipline rather than a demotion or termination, we combined the third and fourth elements and required only that the plaintiff prove she suffered an adverse employment action. *See id.* at 1195–96; *see also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (same).

Many of our sister circuits have articulated the fourth element of the *McDonnell-Douglas* prima facie test as a catch-all requiring only that the adverse action "occurred under circumstances giving rise to an inference of [] discrimination." *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 104 (2d Cir. 1989) (emphasis omitted); *see, e.g.*, *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011); *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024). This overarching description of the standard captures the essence of the various formulations of the test we have been applying in our cases, and we adopt it here.

The "similarly situated" articulation of the fourth element, on which the district court relied, was added to the fourth element to take into account factual situations in which plaintiffs could not satisfy the fourth element as articulated in *McDonnell Douglas.* In *Washington v. Garrett*, 10 F.3d 1421 (9th Cir. 1993), we excused a plaintiff's inability to identify a replacement employee,

concluding that in "reduction in force" cases where a person's "position was abolished for discriminatory reasons, the fact that she was not replaced by someone not of her protected class is not fatal to her claim." *Id.* at 1433; *see also Haydon v. Rand Corp.*, 605 F.2d 453, 454 n.1 (9th Cir. 1979) (same). We held that such a plaintiff could instead establish a prima facie case of discrimination by showing "that others not in her protected class were treated more favorably." *Washington*, 10 F.3d at 1434 (citing *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 60 (3d Cir. 1988)).

There was an inability to point to a replacement employee in both *Cornwell* and *Freyd*, the two cases cited by the district court in its attempt to apply the *McDonnell Douglas* standard. In *Cornwell*, the plaintiff's employer eliminated his position entirely after demoting him. *See* 439 F.3d at 1023. And in *Freyd*, the plaintiff was never removed from her position; she instead challenged the discriminatory pay practices of her employer. *See* 990 F.3d at 1224. In both cases, we applied the alternative standard of requiring a showing that the plaintiffs were treated less favorably than similarly situated individuals because given the factual circumstances, a requirement that the plaintiff identify a "replacement" employee would have been unintelligible. *See Cornwell*, 439 F.3d at 1028; *Freyd*, 990 F.3d at 1228.

Thus, a Title VII plaintiff who cannot show that her "position remained open and the employer continued to seek applicants," *McDonnell Douglas*, 411 U.S. at 802, or that her position "was ultimately filled by a white man," *St. Mary's Honor Center*, 509 U.S. at 506, can alternatively establish a prima facie case of discrimination by showing that she was treated less favorably than similarly situated individuals. Showing such differential treatment is not an *additional* requirement under the fourth element of *McDonnell*

*Douglas*. It is, instead, an alternative means of satisfying the fourth element.

We therefore hold that Lui has satisfied the fourth element of the prima facie case. She was removed from her position as Shelton Postmaster and demoted to the position of Roy Postmaster at a lower salary. She was replaced by a white man. Those circumstances give rise to an inference of discrimination, and that is all she needs to show to satisfy the fourth element.

## 2. Independent Adverse Action

Once Lui establishes a prima facie case of discrimination, the burden shifts to USPS "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The district court concluded that Bacon's "independent investigation" into Lui's alleged misconduct was sufficient to carry this burden. *See Lui*, 2023 WL 3269760, at \*6. We disagree.

We have held in a Title VII case that a "subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). Similarly, we have written that "Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus." *Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005).

Based on the record before us, a factfinder could conclude that Bacon's decision was not "actually independent" or that a "biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland*, 494 F.3d at 1182. Bacon's investigation into Lui's alleged misconduct consisted of a documentary review of Delgado's notice of proposed downgrade and the complaints of other employees at the Shelton Post Office. She heard no live testimony. Bacon admitted in her deposition that she never met any of the employees who submitted the complaints. She credited their written complaints even after hearing Roberts's concerns that their complaints were motivated by racial animus. She also stated that she had "no idea" whether the complainants were white. That is, she based her decision on reports and documents containing information provided by the very individuals that Lui has alleged to be racially biased. At the very least, there is a genuine dispute of material fact about whether Bacon's decision was actually independent or influenced by subordinate bias. The district court erred in holding otherwise.

## B.  Hostile Work Environment

The district court did not reach the merits of Lui's hostile work environment claim because it concluded that she failed to exhaust her administrative remedies. *Lui*, 2023 WL 3269760, at *9–10. We disagree with the district court's conclusion.

Lui argued in the district court in response to USPS's motion for summary judgment that she had exhausted her administrative remedies. However, she did not mention exhaustion in her opening brief to us. Only in her reply brief did Lui argue that she had exhausted her administrative

remedies. USPS contends that Lui's failure to address exhaustion of administrative remedies in her opening brief waived the argument, thereby waiving her claim of hostile work environment.

Contrary to USPS's arguments, Lui's failure to address administrative exhaustion in her opening brief is at most forfeiture, not waiver. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). Waiver is the "intentional relinquishment or abandonment of a known right," whereas forfeiture is the "failure to make the timely assertion of a right." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). That is, "arguments raised for the first time on appeal or omitted from the opening brief" are usually "deemed forfeited." *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018); *see also Hebrard v. Nofziger*, 90 F.4th 1000, 1006 ("[T]he failure to raise an argument in a timely fashion is a forfeiture not a waiver.").

"We generally do not consider issues that are not raised in the appellant's opening brief." *Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016). But this rule is subject to exceptions. "We have discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief." *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991). We can also review a forfeited issue "if the failure to raise the issue properly did not prejudice the defense of the opposing party." *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). In context and as used here, "argument" and "issue" are synonymous terms. Both exceptions apply here.

A review of the district court record reveals that USPS had notice of Lui's position and arguments. Lui's response to the motion for summary judgment addressed USPS's arguments regarding exhaustion. Indeed, the magistrate judge recommended to the district court a finding that Lui had exhausted her administrative remedies. In its brief to us, USPS spent multiple pages arguing that Lui had failed to exhaust. Finally, counsel for both parties were questioned on the exhaustion issue at oral argument in our court. We therefore exercise our discretion to address exhaustion.

Title VII requires federal employees to "notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct." *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). As recounted above, on October 28, 2019, Carter Clark, Manager of Postal Operations for the Seattle District, signed a notice of a proposed downgrade for Lui. It is undisputed that Lui notified the EEO of her hostile work environment claim within 45 days of that date. *See Lui*, 2023 WL 3269760, at \*9.

The Supreme Court has distinguished between discrete employment actions, which can form the basis for a disparate treatment or retaliation claim, and repeated actions, which collectively can form the basis for a hostile work environment claim. *See Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . Such claims are based on the cumulative effect of individual acts."). For discrete acts of retaliation or discrimination, the statutory deadlines run from the date of the act. *See id.* at 110. For hostile work environment claims, "an act contributing to the claim" must "occur[] within the filing period." *Id.* at 117.

The district court found that Lui's proposed downgrade to Roy Postmaster was a discrete adverse employment action rather than an act that formed part of a hostile work environment.  *See Lui*, 2023 WL 3269760, at \*9 (citing *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646–47 (9th Cir. 2003) and *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).  The court concluded that this downgrade did not form the basis of Lui's alleged hostile work environment because Lui "fail[ed] to present any evidence indicating that" Clark, who signed the proposed downgrade, "was improperly influenced by discriminatory bias."  *Id.* at \*9.  There is no other act within the 45-day period that can be construed as forming a part of Lui's claim of hostile work environment.

We have no doubt that the October 29, 2019, notice of proposed downgrade, if considered alone, could constitute a discrete adverse employment action.  But that does not mean that the notice could not also have been part of the series of actions that cumulatively constituted a hostile work environment.  As the district court recognized, Delgado and Stoke presented the notice of proposed downgrade to Roberts for him to sign.  After Roberts refused to sign it, they brought in an outsider—Clark, a manager from Seattle—to replace him as signatory.  So far as the record reveals, Clark had no independent knowledge of the underlying facts and was merely acting as a cat's paw for Delgado and Stoke.  *See generally EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484–85 (10th Cir. 2006) (tracing the origin of the "cat's paw" term and rationale).  Roberts stated in his declaration that the decision to downgrade Lui "was already made by Ms. Delgado and Mr. Stoke prior to Mr. Clark taking over as the Proposing Official."  The notice of proposed downgrade was thus a part—indeed, the culmination—of the

actions that Lui contends created a hostile work environment at the Shelton Post Office.

We therefore conclude that Lui exhausted her administrative remedies for her hostile work environment claim. We remand to the district court for it to address the merits of her claim.

## C. Retaliation

Title VII retaliation claims use the same burden-shifting *McDonnell Douglas* framework used for discrimination claims. *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case of retaliation, Lui must show that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions," and Lui "must produce evidence to show that the stated reasons were a pretext for retaliation." *Id.*

Lui contends that USPS engaged in unlawful retaliation by demoting her based on the third charge of "Unacceptable Conduct"—that Lui had improperly brought an employee's husband into a staff-only area of the Post Office while investigating his complaint that a Post Office employee had sexually harassed his wife. The parties dispute whether Lui's investigation of the alleged sexual harassment was protected activity. We do not reach that issue, however, because the district court correctly found that Lui failed to establish a causal connection between this conduct and USPS's decision to downgrade her position. *See Lui*, 2023 WL 3269760, at *3.

Bacon explicitly stated that she did not consider the third charge "in making [her] determination as to the appropriate penalty." She instead confirmed the downgrade proposal based on the first two charges of misconduct. Lui does not claim that the conduct at issue in these two charges was protected activity. Instead, she contends that Bacon's refusal to rely on the third charge was a subterfuge. She argues that a jury could conclude that Bacon's true motivation was to punish her based on that charge rather than the first two charges. But Lui points to no evidence supporting her contention. She has thus failed to "produce evidence to show that [Bacon's] stated reasons were a pretext for retaliation." *Surrell*, 518 F.3d at 1108.

## Conclusion

For the foregoing reasons, we reverse the district court's grant of summary judgment on Lui's disparate treatment claim. We remand to allow the district court to address the merits of Lui's hostile work environment claim. We affirm the district court's grant of summary judgment on Lui's retaliation claim.

**REVERSED IN PART, VACATED AND REMANDED IN PART, AND AFFIRMED IN PART.**